Aljax Corporation, Appellant, *v.* Connecticut Mutual Life Insurance Company.

58

Argued May 2, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused March 14, 1975.

*Anthony L. V. Picciotti,* with him *Dante W. Renzulli, Jr.,* and *Picciotti & Renzulli,* for appellant.

*J. Shane Creamer,* with him *Richard E. McDevitt* and *Montgomery, McCracken, Walker & Rhoads,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 16, 1974:

On June 13, 1968, appellee, Connecticut Mutual Life Insurance Company (Connecticut) issued a policy of life insurance in the amount of $150,000 on the life of one John E. Jafolla. The beneficiary of the policy was appellant, Aljax Corporation (Aljax), of which Mr. Jafolla was president.

The policy premiums were to be paid through a system known as the ConnMuMatic Check Service. Under this plan, Connecticut was issued preauthorized checks of Aljax, one of which it deposited each month with its bank in Hartford. The Hartford bank then credited Connecticut's account and sent the check through the Federal Reserve System to be honored by the Girard Bank (Girard) in Philadelphia, where Aljax maintained its account. Girard would then honor the check and debit the amount to Aljax's account. The cancelled check was then sent by Girard to Aljax, along with other cancelled checks and a monthly statement, on the second working day of the following month.

On January 14, 1969, Mr. Calanero, an officer of Aljax, instructed the office manager of Aljax to telephone Girard and direct it to cancel the automatic checking agreement. This was done and a confirming letter was sent by Aljax to Girard the same day. Connecticut, unaware of the cancellation, deposited in its account the check for the January premium on or about January 15, 1969. This check was honored by Girard over Aljax's stop-payment order dated January 14, 1969. When Aljax's bank statement arrived in February, Aljax contacted Girard and notified it that it had paid the check over the stop-payment order and requested reimbursement for the check.

Girard wrote Connecticut a letter on February 13, 1969, notifying Connecticut of Aljax's cancellation of the check service and requesting that Connecticut reimburse Girard for the check that had been paid over Aljax's stop-payment order. This letter was received by Connecticut on February 17, 1969, two days after Connecticut had deposited another preauthorized check, ostensibly for the February premium, on February 15, 1969. Girard honored this second check and again erroneously charged Aljax's account. By a letter dated February 21, 1969, Connecticut sent a check to reimburse Girard for the January 15 check. On February 25, 1969, Aljax was informed that its account had been reimbursed for the January 15 check. Not until March 7, 1969, did Girard discover that it had erroneously paid the February 15 check. On that date, Girard received a letter from Connecticut, explaining that Connecticut had deposited the February 15 check before receiving word that the checking service had been cancelled and requesting instructions as to whether reimbursement would be required for that check.

Meanwhile, on March 5, 1969, Jafolla was killed in a plane crash. On March 17, 1969, the insurance company was advised that a claim would be made by Aljax on the policy. On April 11, 1969, having received no answer from Girard to its letter of March 7, 1969, Connecticut sent a check to Girard to reimburse it for the February check.[1] Connecticut also took the position that the Aljax policy had lapsed when it reimbursed Girard for the January 15 check, after receiving notice that the checking service had been cancelled.

Aljax filed suit against Connecticut on the policy, alleging that the payment by Girard of the February

---

[1] That check was returned by Girard by letter dated June 26, 1969.

15 check over its stop-payment order constituted a valid premium payment for February, keeping the insurance in effect for February and for the thirty-one day grace period which was allowed by the policy, therefore making the insurance in effect until March 19, 1969, after the death of Jafolla.

The Court of Common Pleas of Philadelphia County, after a nonjury trial, found for Connecticut, and the Superior Court affirmed the judgment on appeal. We granted allocatur and now we reverse.

There is no doubt that the cancellation of the checking service constituted an effective stop-payment order on the part of Aljax under §4-403 of the Uniform Commercial Code. Connecticut and the trial court, citing Comment 8 to §4-403 of the U.C.C., which provides: "A payment in violation of an effective direction to stop payment is an improper payment, even though it is made by mistake or inadvertence," argued that because Girard's conduct in honoring the February 15 check was improper, that check could not be treated as payment of the February premium. However, §4-403 and Comment 8 to that section are not relevant to the issue before us. Section 4-403 was intended to deal with a customer's rights against its bank for improperly paying an item. Comment 8 goes on to refer to §4-407 of the U.C.C., which spells out the payor's right to subrogation on improper payment. Section 4-407 provides:

"If a payor bank has paid an item over the stop payment order . . . to prevent unjust enrichment and only to the extent necessary *to prevent loss* to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights . . .

"(b) of the payee [in our case, Connecticut] . . . against the drawer or maker [Aljax] either on the item or under the transaction out of which the item arose; and

"(c) of the drawer or maker [Aljax] against the payee [Connecticut] . . . with respect to the transaction out of which the item arose." (Emphasis supplied.)

Thus, in order for Girard to have subrogation rights against Connecticut, under §4-407(c), it must first suffer a loss by reason of its payment of the item. Moreover, Connecticut's liability in such a case would not be on the item, but on the underlying obligation— in this case, the insurance policy which Aljax had the right to cancel. In the case before us, Girard had such rights with respect to its payment of the January 15 check because it suffered a loss when Aljax demanded that its account be reimbursed for that item. However, Girard had no such rights with respect to its payment of the February 15 check because it did not suffer loss since Aljax never sought reimbursement for that item.

Although the February 15 check may have been "improperly" paid by Girard under §4-403, it was still "finally" paid under §4-213 of the U.C.C.

Section 4-213 states that an item is finally paid by a payor bank when the bank has taken any of a number of steps, including: "(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged, there-with." Thus, the February 15 check was finally paid when Aljax's account was charged with the item. As Comment 1 to §4-213 makes clear, final payment is important, *inter alia,* because: "'It is the end of the line' in the collection process and the 'turn around' point commencing the return flow of proceeds." Thus, when the February 15 check was honored by Girard, the provisional settlement received by Connecticut's bank in Hartford for the item became final and the money became available for withdrawal by Connecticut as a matter of right. §4-213(4).[2]

----

[2] Section 4-213(4) reads: "Subject to any right of the bank to apply the credit to an obligation of a customer, credit given by a

The provision in the Connecticut monthly check service authorization, upon which Connecticut relies, does not help its case. That provision reads: "No premium or portion thereof shall be deemed to have been paid unless and until the Connecticut Mutual Life Insurance Company receives actual payment at its Home Office and no check drawn by the company shall constitute a receipt for the premium unless it is honored."

Since the February 15 check was in fact "honored" by Girard, albeit improperly, Connecticut received "actual payment at its Home Office." Thus, by the terms of Connecticut's own provisions, the February premium must be deemed paid.

Connecticut finally argues that since Aljax had obtained insurance policies from another company covering the life of Jafolla, this manifested an intent to cancel the Connecticut policy regardless of what the effect of the payment over a stop-payment order was. We see no merit in this argument. Aljax could legally have had several different insurance policies on the life of Jafolla from several different companies.

Order of the Superior Court and judgment of the Court of Common Pleas of Philadelphia County are reversed and the case is remanded to the Court of Common Pleas of Philadelphia for further proceedings consistent herewith.

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice JONES dissents.

---

bank for an item in an account with its customer becomes available for withdrawal as of right

"(a) in any case where the bank has received a provisional settlement for the item,—when such settlement becomes final. . . ."