585 A.2d 493

**William and Leontine BLASY, Appellants,**

v.

**CHESTER COUNTY MUTUAL INSURANCE CO.**

Superior Court of Pennsylvania.

Argued Nov. 28, 1990.

Filed Dec. 21, 1990.

Reargument Denied Feb. 8, 1991.

Roger J. Harrington, Philadelphia, for appellants.

James H. Heller, Philadelphia, for appellee.

Before OLSZEWSKI, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is an appeal from a May 21, 1990 Order granting summary judgment for appellee Chester County Mutual Insurance Company (Chester Mutual). The pertinent facts are that on August 1, 1986, William and Leontine Blasy (Blasys) obtained an insurance policy from Chester Mutual, providing homeowners insurance protection for the period between August 1, 1986 through August 1, 1987. The policy provided that the insured "must pay Chester Mutual prior to the end of the current policy period or else the policy will expire." It is uncontested Chester Mutual was

at all times willing to renew the policy upon the condition precedent the Blasys pay the renewal premium on or before August 1, 1987. On or about July 16, 1987, Chester mailed the Blasys a declaration of renewal for the policy. The Blasys did not pay the premium on or before the August 1st due date and have never paid a renewal premium to Chester Mutual. On or about September 4, 1987, Chester mailed the Blasys a notice informing them that the policy would terminate on October 6, 1987 due to non-payment of premiums.

In 1985, the Blasys purchased auto insurance underwritten by Fireman's Fund through Calter McKenna Insurance Agency, a registered agent of Fireman's Fund. In 1986, Calter McKenna informed the Blasys that they would continue the Fireman's Fund automobile coverage on the condition that the Blasys also purchase their homeowners insurance from Fireman's Fund. Mr. Blasy testified as follows:

Q. And were you using [Calter McKenna] for your automobile insurance at that time?

A. Yes.

Q. How long had you been using [Calter McKenna] for insurance?

A. I'm guessing, approximately 1985.

Q. When did [Calter McKenna] tell you that in order to continue writing automobile insurance, that you had to switch your homeowners to them, also?

A. When I took out the car insurance, [Calter McKenna] said when my homeowners [with Chester County Mutual Insurance Company] expires I would have to renew it with [Fireman's Fund].

Q. Do you know the date or time of year that we're talking about?

A. Probably—must have been in '86 then. I'm not sure.

Q. When did [Calter McKenna] tell you that you had to renew—you had to start your [Fireman's Fund] homeowners insurance program with them in order to renew your automobile insurance, in relationship to when your automobile insurance expired?

A.   They told me when the homeowners insurance expires, just pick it up from there.

Q.   And that was during the year you had your automobile insurance with them?

A.   Yes.

(N.T., 10/20/89, pp. 14–15.)   The Blasys purchased Fireman's Fund Homeowners insurance coverage.   This coverage commenced August 6, 1987.

The Blasys instant complaint against Chester Mutual alleges that their home sustained water damage on August 3, 1987.   They further aver that even though they did not pay Chester to renew the insurance, they were covered until October 6, 1987, pursuant to the July 16, 1987 renewal policy mailed out by Chester.

A motion for summary judgment is governed by Pa.R. C.P. Rule 1035 which, in pertinent part, provides:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

"The function of the summary judgment proceedings is to avoid a useless trial but is not, and cannot, be used to provide for trial by affidavits or trial by depositions." *Goodrich–Amram.* 2d § 1035.1, p. 423.   "That trial by testimonial affidavit is prohibited 'cannot be emphasized too strongly'." *Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 183, 439 A.2d 652, 662 (1981), citing *Goodrich–Amram* 2d § 1035(d): 1 at p. 455.   In considering a motion for summary judgment, the trial court must examine the whole record, including the pleadings, any depositions, any answers to interrogatories, admissions of record, if any, and any affidavits filed by the parties. From this thorough examination the lower court will determine the question of whether there is a genuine issue as to any material fact.   On this critical question, the party who brought the motion has the burden of

proving that no genuine issue of fact exists. All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of summary judgment. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Goodrich–Amram,* supra., § 1035(b): 3, p. 432.

*See Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 175, 553 A.2d 900, 902 (1989).

■■■■ An insurer bears the burden of proving an effective cancellation prior to the loss. *Coppola v. Insurance Placement Facility of Pennsylvania,* 386 Pa.Super. 413, 563 A.2d 134 (1989), alloc. denied 525 Pa. 582, 575 A.2d 113 (1990). A cancellation by an insured is effective on the date the insured intends to cancel and not on the date that the insurance company receives notice of cancellation; as long as the insured manifested intent is clear and precise. *Coppola, supra.* Thus mere non-payment does not equate to an intent to cancel.

■■■■ In *Federal Kemper Ins. Co. v. Com. Ins. Dept.,* 509 Pa. 1, 500 A.2d 796 (1985), an appeal was taken to our Supreme Court from the Commonwealth Court. The case concerned the statutory construction and the interpretation of the insurance statute, 40 P.S. § 1008.6(2). Although the case is not controlling, we find it instructive as to the question of what constitutes an effective cancellation under Pennsylvania law. An insurer is required to show the insured has knowledge that a premium was due but still refuses to pay it. We find, after a studied review of the record, that the Blasys' actions, as well as inaction, as a matter of law, manifested a clear and precise intent to cancel their policy of insurance with Chester Mutual on August 1, 1987.

Appellants failed to pay the Chester Mutual insurance premium. Yet this is not a case of an insured's mere non-payment of his premium. Mr. Blasy testified as to his intent not to renew coverage with Chester Mutual but, rather, to replace his Chester Mutual homeowners coverage

with Fireman's Fund coverage. The Blasys' inaction in nonrenewal of the Chester Mutual policy combined with the purchase of the Fireman's Fund policy, as well as the testimony evidencing the deliberate intention to obtain new coverage to supplant the old, are overt acts demonstrating the Blasys' clear intent not to renew their Chester Mutual policy. Thus no material issue of fact is raised and the Blasys' cause of action fails as a matter of law.

■ Additionally, we find the Blasys' reliance on *Paul v. Dwyer*, 410 Pa. 229, 188 A.2d 753 (1963), misplaced. The *Paul* decision does not concern, as here, a deliberate cancellation of a policy by an insured. 40 P.S. § 1171.5(a)(9) **Unfair methods of competition or deceptive acts or practices defined,** requires that insurers notify an insured prior to termination for non-payment. The purpose behind this legislation is to essentially protect an innocent insured who forgets to pay his premium by continuing the protection of coverage and allowing the insured to pay. The statute does not, however, force an insurer to extend coverage past the policy period to those who knowingly and intentionally choose not to pay their premiums.

Therefore, we reject appellants' contention they were covered under the renewal policy during the period of August 1 through October 6, 1987. As we have thoroughly discussed in the preceding analysis, the Blasys demonstrated by their overt acts their clear intent to cancel the Chester insurance as of August 1, 1987 and replace their homeowners coverage with Fireman's Fund upon expiration.

As the trial court has so succinctly stated:

What the plaintiffs fail to acknowledge is that the purpose of the notice requirement on the insurance policy, and the purpose of Act 40 P.S. 1171.5, is to insure that policy owners do not unknowingly find themselves without coverage.

The public policy concern is the reason that insurance companys [sic] must follow so many procedures before cancelling an insured's coverage and the reason that the

insured must make a clear, unequivocal overt act before the revocation becomes effective. The important consideration in this scenario is that the insured was aware of the fact that he no longer had coverage. If such an awareness exists, then there is no need for the insurance company to confirm the insured's knowledge.

That the plaintiffs were aware that their policy was no longer in effect was evidenced by the fact that they did not pay their premium on time; have not payed [sic] their premium to this date; and in fact purchased insurance from another company. Such a deliberate refusal to pay a renewal premium can constitute an overt act sufficient to cancel an insurance policy.

* * * * * *

The purpose behind 49 P.S. 1171.5 for homeowners insurance, and 40 P.S. 1008.6 for automobile insurance, is that the insured be informed when his policy is no longer viable. Since it is the insured's knowledge and not the insurer's notification that we are concerned with, the overt act requirement should be interpreted to mean an action in which the insured makes a conscious decision to discontinue his or her insurance coverage.

The Blasys' decsion [sic] not to pay the premium was a conscious and calculated move on their part. They should not now be heard to contend that the insurance company's denial of coverage came as a shock to them.... By purchasing another policy from a different company, and refusing to pay the renewal premium on the old policy, the Blasys evinced an unequivocal intent to cancel.

(Slip Op., Lowe, J., 6/27/90, pp. 3–5.) We find the *Coppola, supra,* decision controlling, and the rationale advanced by the trial court dispositive.

Order affirmed.