CIRILLO, Judge:
 

 This is an appeal from a judgment entered in the Court of Common Pleas of Washington County. We affirm.
 

 On February 4, 1989, appellants E. Glenn and Donnice Scotts’ home was destroyed by fire. At the time of the fire, the Scotts’ property was insured by Southwestern Mutual Fire Association (Southwestern). The Southwestern policy carried a three year term, payable annually, commencing on January 13, 1988 and terminating on January 13, 1991. The policy provided coverage in the amounts of $45,000.00 for the dwelling, $15,000.00 for household and personal property (contents), and $3,000.00 for the detached garage and its contents. The record indicates that the Scotts paid the first annual premium in the amount of $243.00.
 

 In late December of 1988, Southwestern sent a renewal notice of premium to the Scotts for the term commencing on January 13, 1989. The Scotts did not respond to this notice. Rather, on January 13, 1989, the Scotts applied for other homeowner’s insurance with the Prudential Insurance Company (Prudential). The Scotts conveyed to a Prudential agent their intent to replace the Southwestern policy with the Prudential policy. Mrs. Scott entered into a binder of insurance with Prudential on January 13, 1989, effective that same day, which provided in pertinent part:
 

 I understand that the company [Prudential] hereby binds ... the coverage and limits of liability shown in the application .... The temporary insurance provided by this BINDER shall terminate not later than thirty days from the Effective Date stated. Earlier termination will result will result from: (1) Issuance of a policy in which event this
 
 *246
 
 BINDER is void; or (2) Cancellation by the Applicant or by the Company.
 

 The binder provided coverage in the amounts of $68,500.00 for the dwelling and $47,950.00 for the personal property. The binder also contained a notation that Southwestern was the Scotts’ “previous insurer,” with the expiration date of that policy at “1/13/89.” To effectuate the binder, Mrs. Scott made a payment to Prudential in the amount of $61.00.
 

 On February 2, 1989, two days before the fire, Mrs. Scott telephoned Southwestern and informed Southwestern secretary, Norma Geisel, that she and Mr. Scott had entered into a binder of insurance with Prudential and that she, therefore, intended to cancel their policy with Southwestern. On or about February 27, 1989, Mrs. Scott made a second premium payment to Prudential.
 

 Approximately two months after the fire, the Scotts filed Proof of Loss Statements for their dwelling and personal property -with Prudential. Pursuant to these statements, Prudential paid out the limits of its liability. The following month, in May of 1989, the Scotts filed a Proof of Loss Statement with Southwestern for personal property only. Southwestern denied the claim, contending that the policy had been cancelled on January 13, 1989 or, at the very latest, on February 2, 1989, two days prior to the date of the fire. The Scotts filed the instant action against Southwestern for breach of contract.
 

 Before the Honorable Thomas J. Terputac, a jury returned a verdict in favor of the Scotts, finding that the Southwestern insurance policy was not cancelled prior to the date of the fire. The jury then awarded the Scotts $59,131.00. Thereafter, Southwestern moved for judgment notwithstanding the verdict (JNOV) and/or a new trial. The Scotts moved for prejudgment interest on the damages which the jury awarded. Judge Terputac granted Southwestern’s motion for JNOV and entered judgment thereon. Judge Terputac, therefore, did not decide the Scotts’ motion for prejudgment interest. The
 
 *247
 
 Scotts now appeal from the judgment and raise one question for our review:
 

 Whether the trial court erred in determining that the Scotts cancelled the insurance policy as a matter of law, and thereby granting JNOV?
 

 The standard of review for an appellate court is the same as that for a trial court: JNOV will be entered only in a clear case where the facts are such that no two reasonable minds could fail to agree that the verdict was improper.
 
 Pirozzi v. Penske Olds-Cadillac-GMC,
 
 413 Pa.Super. 308, 311, 605 A.2d 373, 375 (1992). We must determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference that can be reasonably drawn from the evidence and rejecting all unfavorable testimony and inferences.
 
 Wenrick v. Schloemann-Siemag Aktiengesellschaft, et al.,
 
 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989);
 
 Spagnol Enterprises, Inc. v. Digital Equipment Corp.,
 
 390 Pa.Super. 372, 374, 568 A.2d 948, 949 (1990). An appellate court will reverse a trial court’s ruling only if it finds an abuse of discretion or an error of law that controlled the outcome of the case.
 
 Timbrook v. Foremost Ins. Co.,
 
 324 Pa.Super. 384, 387, 471 A.2d 891, 892 (1984).
 

 The issue which is presented to this court is whether the Scotts cancelled their policy with Southwestern prior to the date of the fire. Generally, the law requires that when an insurance policy is to be cancelled, the conditions upon which the right is exercised must be strictly complied with, unless the insured waives this requirement.
 
 Pomerantz v. Mutual Fire Ins. Co.,
 
 279 Pa. 497, 499, 124 A. 139, 140 (1924);
 
 Letvin v. Phoenix Ins. Co.,
 
 91 Pa.Super. 422, 426-27 (1926);
 
 see also Federal Kemper Ins. Co. v. Commonwealth, Ins. Dept.,
 
 509 Pa. 1, 500 A.2d 796 (1985) (holding that an insured who does not wish to continue a policy is free to cancel the policy at any time, as long as that right is provided for in the policy).
 

 Where the cancellation of a policy is relied upon as an affirmative defense, the burden is on the defendant (insurer) to prove an effective cancellation of the policy prior to the loss.
 
 *248
 

 Moser Mfg. Co. v. Donegal & Conoy Mut. Fire Ins. Co.,
 
 362 Pa. 110, 115, 66 A.2d 581, 584 (1949);
 
 see also Hanna v. Reliance Ins. Co.,
 
 402 Pa. 205, 166 A.2d 877 (1961);
 
 Harty v. Standard Acc. Ins. Co.,
 
 394 Pa. 358, 147 A.2d 421 (1959);
 
 Coppola v. Insurance Placement Facility,
 
 386 Pa.Super. 413, 563 A.2d 134 (1989);
 
 Mackiw v. Pennsylvania Thresh. & Farmers Mut. Cas. Ins. Co.,
 
 201 Pa.Super. 626, 193 A.2d 745 (1963). The crux of the insurer’s burden turns on whether it can prove that the insured had a clear and precise intent to cancel the policy prior to the loss.
 
 Coppola,
 
 386 Pa.Super. at 416, 563 A.2d at 136;
 
 see also Del Boring Tire Service v. Federal Emergency Management Agency,
 
 496 F.Supp. 616 (W.D.Pa.1980).
 

 The standards to be applied in reviewing insurance contracts are well settled. The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.
 
 Dibble v. Security of America Life Ins. Co.,
 
 404 Pa.Super. 205, 210, 590 A.2d 352, 354 (1991). In determining the reasonable expectations of the insured, courts must examine the totality of the insurance transaction involved.
 
 Id.
 
 However, while reasonable expectations of the insured are the focal points, in interpreting the contract language of insurance policies,
 
 see Collister v. Nationwide Life Insurance Co.,
 
 479 Pa. 579, 388 A.2d 1346 (1978) and
 
 Winters v. Erie Insurance Group,
 
 367 Pa.Super. 253, 532 A.2d 885 (1987), an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.
 
 Bateman v. Motorists Mut. Ins. Co.,
 
 527 Pa. 241, 244, 590 A.2d 281, 283 (1991);
 
 see also Neil v. Allstate Insurance Co.,
 
 379 Pa.Super. 299, 549 A.2d 1304 (1988);
 
 St. Paul Mercury Ins. Co. v. Corbett,
 
 428 Pa.Super. 54, 630 A.2d 28 (1993) (en banc). However, where a provision of an insurance policy is ambiguous, the provision is construed in favor of the insured and against the insurer.
 
 Bateman,
 
 527 Pa. at 244, 590 A.2d at 283.
 

 We now turn to the facts of this case and the language contained in the Southwestern policy to determine whether
 
 *249
 
 the Scotts cancelled the Southwestern policy prior to the date of the fire. The policy provided that either party could cancel the term of insurance in the following manners: First, an endorsement to the policy provided that “this policy shall be cancelled at any time at the request of the insured upon the return of this policy to the Home Office of the Association and the payment of all assessments or other charges against the policy.” Next, the Amendatory Cancellation and Nonrenewal Endorsement to the policy (Form No. 182) provided:
 

 CANCELLATION FOR NON-PAYMENT OF PREMIUM. This policy may be cancelled by this Company at any time during the policy period for failure to pay any premium when due ... by mailing or delivering to the insured written notice stating when, not less than thirty (30) days ther[e]after, such cancellation shall be effective.
 

 In compliance with the above-quoted provision, Southwestern’s renewal notice to the Scotts contained the following language:
 

 Neglect or failure to pay any Premium within thirty days from [the] date of this notice to pay same shall without further notice, render the policy void as to the interest of the insured until such payment be made, and in no case shall the Association be liable to the insured for any loss occurring during such suspension.
 

 Although the renewal notice was sent to the Scotts sometime in late December of 1988, the only date contained in or on the notice was January 13, 1989, the annual renewal date of the policy. The Scotts argued before the trial court, therefore, that their “30 day grace period” was to run until February 13, 1989. They asserted,
 
 a fortiori,
 
 that their policy with Southwestern was still in effect at the time of the February 4th fire. They also contended that they did not cancel their policy with Southwestern prior to their loss, because they did not return the Southwestern policy as per the requirements of the policy and the request of the Southwestern agent, and that they did not intend to do so until, and only if, they were assured permanent coverage by Prudential.
 

 
 *250
 
 The trial court found that regardless of their subjective intent, the Scotts, by their words and actions, effectively cancelled the Southwestern policy. We agree.
 

 The Pennsylvania Supreme Court first addressed this issue in 1896 in
 
 Arnfeld & Son v. Guardian Assurance Co.,
 
 172 Pa. 605, 34 A. 580 (1896), and in
 
 Jones v. Alliance Mut. Fire Ins. Co.,
 
 174 Pa. 438, 34 A. 198 (1896). In
 
 Amfeld,
 
 the insurer (Insurer 1) issued a one-year fire insurance policy to the insured, covering the insured’s clothing/inventory in its Pitts-burg store. The policy provided that the coverage could be cancelled “at any time at the request of the insured, or by the company, by giving five days notice of such cancellation. If this policy shall be cancelled ... the unearned portion [of the premium paid] shall be returned on surrender of this policy....” 172 Pa. at 606, 34 A. at 580.
 

 On May 8, 1893 (Day 1), the insurer gave verbal notice to the insured’s broker that the policy would be cancelled within five days. The broker informed the insurer that it would replace the policy as soon as possible, and, on Day 3, purchased insurance from Insurer 2 for the same amount of coverage.
 
 Id.
 
 at 607, 34 A. at 508. That same day, the broker apprised Insurer 1 that the substitution had been made. With respect to the first policy, nothing further was done; the policy was not surrendered to Insurer 1, and Insurer 1 did not return any part of the unearned premium.
 
 Id.
 

 On Day 4, the insured premises were destroyed by fire. The insured collected a pro-rata share of the loss from Insurer 2 and filed suit against Insurer 1, alleging that there was no effectual cancellation of the policy with Insurer 1 at the date of the loss.
 
 Id.
 
 Reversing the judgment in favor of the insured, the Supreme Court of Pennsylvania, invoking principles of equity, found that, although there was no formal or technical cancellation of the policy, there was
 

 a substitution of the liability of a third party [Insurer 2] for that of the defendants [Insurer 1], by the consent of the plaintiffs [insured], defendants, and the third party____ Defendants’ contract was one of indemnity in a fixed amount
 
 *251
 
 against loss by fire on certain goods; a third party ... took its place and indemnified plaintiffs against precisely the same loss, in the same amount, on [the] same goods, then stood by its contract, and paid the loss. This was a complete and effectual substitution of another insurer in place of defendants.
 

 Id.
 
 at 608, 34 A. at 581.
 

 Later in 1896, the Pennsylvania Supreme Court examined a similar issue in
 
 Jones v. Alliance Mut. Fire Ins. Co.,
 
 174 Pa. 438, 34 A. 198 (1896). There, the insured was issued a fire and lightning insurance policy, with the limits of the insurer’s liability set at $1,000.00. The application for insurance, which was attached to the policy, provided that “I [the insured] promise to pay the said company, such sum or sums of money ... as the board of directors of said company may require and assess; and if such assessment be not paid to the company ... within thirty days after notice of the same, to pay 25 per cent, [sic] thereon, for expenses of collection.... [I]n every such case, the insurance under this policy shall cease until such assessment is paid.”
 
 Id.
 
 at 440, 34 A. at 199. Pursuant to this clause in the application, the insurer sent an assessment notice to the insured requesting that the insured remit $7.50 within 30 days. The insured never paid the assessment.
 
 Id.
 

 Approximately nine months later, the insured’s property was destroyed by fire. At the time of the fire, notwithstanding the above-mentioned policy of insurance, the insured held four additional policies on the same property; three of these four additional policies were procured
 
 after
 
 the insured obtained insurance from the defendant/insurer in this case (Insurer 1). Shortly after the fire, the insured filed a Proof of Loss Statement with Insurer 1. Insurer 1 denied the claim, alleging that the policy had been cancelled by the insured’s failure to pay the $7.50 assessment.
 
 Id.
 
 at 441, 34 A. at 200. The insured told an agent of Insurer 1 that he did not pay the assessment because “he had taken policies in other companies ... in place of that issued to him by [Insurer 1].”
 
 Id.
 

 
 *252
 
 The insured then instituted suit against Insurer 1. The trial court denied the insured’s claim, and the Supreme Court affirmed. The Court found, specifically, that:
 

 The [insured] admitted ... that he had received notice of the assessment ... a day or two after it was mailed to him. As a matter of fact he never paid the assessment and the evidence [shows] that he never intended to pay it, but that he intended to abandon the policy.
 

 Id.
 
 at 442, 34 A. at 201.
 

 The Pennsylvania Supreme Court later addressed this issue in
 
 Scheel v. German-American Ins. Co.,
 
 228 Pa. 44, 76 A. 507 (1910). In
 
 Scheel,
 
 the insurer (Insurer 1) issued a fire insurance. policy to the insured. The policy provided that “the policy shall be cancelled at any time at the request of the insured; or by the company by giving five days’ notice of such cancellation.”
 
 Id.
 
 at 47, 76 A. at 508. Pursuant to this provision, the Insurer 1 gave the insured five days’ notice of cancellation (Day 1). The cancellation notice further provided that “said policy will absolutely cease on the expiration of this notice unless surrender thereof to said company be sooner made.”
 
 Id.
 
 at 47-48, 76 A. at 508. On Day 4, a second insurer (Insurer 2) issued the insured a binder of insurance covering the same property. On Day 5, a fire destroyed the insured property, and the insured recovered proceeds from Insurer 2. Insurer 1 denied liability under its policy with the insured; the insured then filed suit against Insurer 1.
 
 Id.
 

 Insurer 1 argued that when the insured received notice of the intended cancellation and promptly applied for and obtained replacement insurance from Insurer 2 in the same amount, the insured’s intent was to accept the cancellation, waive the full time limit of five days, and substitute Insurer l’s policy with Insurer 2’s policy.
 
 Id.
 
 at 48, 76 A. at 508. The trial court ruled in favor of Insurer 1, but the Pennsylvania Supreme Court reversed. The Supreme Court stated that, because the insured allegedly replaced one policy with another, Insurer 1 may be relieved from liability only if it can demonstrate:
 

 
 *253
 
 not only that such [replacement] was the intention of the assured[,] but that his intention was carried out with his consent and by his agreement with the company. In other words, the mere procurement of another policy on the same property ... within the five-day limit does not disclose an intention ... to cancel the earlier policy ...; and in order that it may have such effect, the company must aver and prove that the assured consented and agreed to the cancellation and the substitution of the later for the earlier policy.
 

 Id.
 
 at 49, 76 A. at 508 (emphasis added). The Supreme Court ruled that Insurer 1 did not meet this standard. It held that Insurer 1 failed to aver any of the following: (1) that it had any knowledge prior to the fire or prior to the expiration of the five days that the insured had purchased insurance from Insurer 2; (2) that there was any written or oral agreement between the parties that the policy was or should be cancelled; or (3) that Insurer 1 had any knowledge of the intention of the insured to substitute one policy for the other. In summary, the
 
 Scheel
 
 case stands for the proposition that the mere procurement of additional insurance on the same property is not sufficient to relieve the initial insurer from liability.
 
 See also Aljax Corp. v. Connecticut Mut. Life Ins. Co.,
 
 458 Pa. 57, 333 A.2d 469 (1974) (holding that a corporate beneficiary is legally entitled to have multiple insurance policies from different insurance companies on the life of the corporate president and that its procurement of additional policies did not by itself indicate an intent to cancel any other policy).
 

 Next, in
 
 Coppola v. Insurance Placement Facility,
 
 386 Pa.Super. 413, 563 A.2d 134 (1989), the insureds purchased fire insurance from the Insurance Placement Facility of Pennsylvania (Insurer 1), with a term running from November 18, 1981 through November 18, 1982. On March 25, 1982, however, the insureds met with their broker and obtained other insurance from the North River Fire Insurance Company (Insurer 2). On the same day, the insureds executed a cancellation request form to cancel their policy with Insurer 1. While the cancellation request form was dated March 25,1982,
 
 *254
 
 Insurer 1 did not receive actual notice of the cancellation until April 13, 1982. Return premiums were subsequently sent to the insureds based on a March 25, 1982 cancellation date.
 
 Id.
 
 at 414, 563 A.2d at 135.
 

 On April 11, 1982, the insureds’ property sustained substantial fire damage. The insureds collected the limits of Insurer 2’s policy, and submitted a claim to Insurer 1, believing that regardless of when they intended to cancel Insurer l’s policy, the cancellation was not effective until April 13th, the date Insurer 1 actually received notice of the cancellation.
 
 Id.
 
 This court rejected the insureds’ contention and held that the cancellation of the insurance policy was effective on the date that the insureds intended to cancel, and not on the date that the insurer received actual notice of the cancellation.
 
 Id.
 
 at 416, 563 A.2d at 136.
 

 Finally, in
 
 Blasy v. Chester County Mut. Ins. Co.,
 
 401 Pa.Super. 344, 585 A.2d 493 (1990), this court reaffirmed its decision in
 
 Coppola,
 
 holding that “[a] cancellation by an insured is effective on the date the insured intends to cancel the policy, and not on the date that the insurance company receives notice of the cancellation!],] as long as the insuredt’s] manifested intent is clear and precise.”
 
 Id.
 
 at 348, 585 A.2d at 495 (emphasis added).
 

 In
 
 Blasy,
 
 the policy period commenced on August 1, 1986 and terminated on August 1, 1987. In July of 1987, Chester County Mutual Insurance Company (Insurer 1) sent to the insureds a renewal notice; the insureds, however, did not pay the renewal premium by the August 1st due date. Thereafter, Insurer 1 mailed a notice to the insureds, informing them that the policy would terminate on October 6, 1987 due to nonpayment of premiums. On August 3, 1987, the insureds’ property sustained water damage. On August 6, 1987, the insureds purchased other insurance from another homeowner’s insurance carrier (Insurer 2). Thereafter, the insureds filed a proof of loss with Insurer 1, claiming that, pursuant to the cancellation notice, they were covered until October 6, 1987.
 
 Id.
 
 at 345-47, 585 A.2d at 493-94. After examining the facts of the case, this court held that “the
 
 *255
 
 [insureds’] inaction in nonrenewal of the Chester Mutual (Insurer 1) policy combined with the purchase of the Fireman’s Fund (Insurer 2) policy, as well as the testimony evidencing the deliberate intention to obtain new coverage to supplant the old, are overt acts demonstrating the [insureds’] clear intent not to renew their Chester Mutual policy.”
 
 Id.
 
 at 349, 585 A.2d at 495.
 

 When read together, the decisions in
 
 Amfeld, Jones, Scheel, Coppola,
 
 and
 
 Blasy
 
 form the following legal standard. As noted above, an insurance policy may be cancelled or terminated by any party to the contract, if such cancellation is provided for in terms of the policy. Strict compliance with the policy’s cancellation provisions can be waived, however, when an insured’s objective intent to cancel is precise and clear.
 

 We recognize that the mere procurement of additional insurance by an insured does not necessarily evidence an intent to cancel the existing policy. Likewise, the mere nonpayment of a premium by the insured does not evidence a specific intent to cancel the existing policy. When two or more of these factors are found to co-exist, however, there exists sufficient evidence of the insured’s intent to cancel the prior insurance policy. For example, the nonpayment of premiums, along with the purchase of a policy from a different insurer and testimony evidencing the insured’s deliberate intention to obtain new coverage to supplant the old, establishes the insured’s clear and precise intent not to renew the original policy.
 
 Arnfeld, supra; Jones, supra; Scheel, supra; Coppola, supra; Blasy, supra.
 

 Against this backdrop, we turn to the case at hand. In the summer of 1988, the Scotts spoke with a Prudential agent regarding the possible replacement of their Southwestern policy with a Prudential policy. The Scotts deferred this transaction, however, until the renewal date of their Southwestern policy (January 13, 1989). In late December of 1988, Southwestern sent to the Scotts a renewal notice for the policy period commencing on January 13, 1989. The Scotts did not pay their renewal premiums to Southwestern, nor did they
 
 *256
 
 intend to do so. Instead, on precisely January 13, 1989, the Scotts applied for other insurance with Prudential, paid an initial premium to Prudential in the amount of $61.00, and received a 30 day binder of insurance. Most notably, in the Prudential application, the Scotts listed the expiration date of the Southwestern policy as January 13, 1989. Two days prior to the fire, the Scotts notified a Southwestern agent regarding their transaction with Prudential, and their intent to replace the Southwestern policy with the Prudential policy.
 

 On February 4, 1989, a fire caused severe damage to the Scotts’ home and contents therein. On February 10, 1989, the Scotts entered into a Public Adjuster Contract with the TriState Adjusting Company (Tri-State). While both the Southwestern policy and the Prudential binder and application were kept in the same fire box in the Scotts’ home, the Scotts only turned over the Prudential binder to the Tri-State agent when they entered into the adjuster contract. At that time, no mention was made of the Southwestern policy.
 

 On or about April 27, 1989, the Scotts filed two notarized Proof of Loss Statements with Prudential, one for their dwelling and the other for their personal property. Both statements contained the following provision:
 

 The Total Insurance covering the property described by the policy and all other policies (whether valid or invalid), binders or agreements to insure at the time of the loss was ... $--
 
 [1]
 

 (underlining added). Although these statements were submitted to Prudential, the above-quoted provisions of the Proof of Loss Statement forms required the Scotts to list all insurance covering their property. In these statements, however, the Scotts failed to list the Southwestern policy as one also covering the damaged property. Additionally, when Mrs. Scott telephoned Prudential after the fire to give notice of the loss, she specifically stated to a Prudential representative that
 
 *257
 
 she had cancelled the Southwestern policy just two days prior to the date of the fire.
 
 [2]
 
 To confirm what Mrs. Scott told her regarding the cancellation of the Southwestern policy, the agent for Prudential contacted Southwestern. A Southwestern agent informed the Prudential agent that Mrs. Scott had, in fact, cancelled the Southwestern policy, effective January 13, 1989.
 

 The Scotts did not file a Proof of Loss Statement with Southwestern until May 10, 1989, over two weeks after they filed their claims with Prudential, and three months after the fire. As of that date, the Scotts still had not paid any premiums to Southwestern for the current policy year.
 

 The Scotts’ actions and inaction in this case clearly demonstrated an objective intent to cancel the Southwestern policy prior to the date of the fire. Specifically, their nonpayment of Southwestern premiums, along with their purchase of the Prudential policy, their express intent to replace the Southwestern policy with the Prudential policy, and other evidence showing the Scotts’ intention to obtain new coverage to supplant the old, established their clear and precise intent to cancel the Southwestern policy on January 13, 1989 or, at the very latest, on February 2, 1989.
 
 Amfeld, supra; Jones, supra; Scheel, supra; Coppola, supra; Blasy, supra.
 

 We note that this case is not unlike that of a creditor who accepts surety for a debt. Often times, the original surety desires to be released from the contract of suretyship and, therefore, requires the debtor to procure a new surety, acceptable to the creditor, to take the place of the original surety. Although the creditor retains possession of the original surety-ship agreement, a new contract is entered into to bind the replacement surety. While the second surety is obligated to pay the debt under the second suretyship contract, the creditor may still sue the original surety under the first agreement, alleging that it had never been formally cancelled. Invoking the equitable powers of the court, however, the creditor’s
 
 *258
 
 claim would be denied, because, as long as the debt of the creditor is paid, the mere possession of the original note would not warrant the exaction of a second payment of the same debt.
 
 See
 
 74 Am.Jur.2d
 
 Suretyship
 
 §§ 82-85 (1974);
 
 see also Janes v. Benson,
 
 155 Pa. 489, 26 A. 752 (1893).
 

 There seems to be little difference between the above-stated scenario and the present case, except that the first is a contract for suretyship and the second of indemnity. We find, therefore, that the trial court did not abuse its discretion or commit an error of law in granting Southwestern’s motion for JNOV.
 
 Timbrook, supra.
 

 Judgment affirmed.
 

 [1]
 

 . The language employed in the Proof of Loss Statement for the dwelling was substantially similar, but not identical, to that contained in the Proof of Loss Statement for the Scotts’ personal property. These minor differences are not dispositive to this appeal.
 

 [2]
 

 . Mrs. Scott consented to the recording of this telephone conversation. The tape recording was played for the jury and was admitted into evidence.