**Anna E. THOMAS and James Thomas**

**v.**

**Michael J. BROWN**

**v.**

**PENNLAND INSURANCE COMPANY.**

**Civil Action No. 96–5258.**

United States District Court, E.D. Pennsylvania.

July 17, 1997.

D. Michael Emuryan, Woodlyn, PA, Lee Ramunno, Rommunno and Ramunno, Wilmington, DE, for Anna E. Thomas, James Thomas.

Richard P.S. Hannum, Prickett, Jones, Elliott, Kristol & Schnee, Kennett Square, PA, George A. Prutting, Jr., Audubon, NJ, for Michael J. Brown.

Curtis P. Cheyney, III, Swartz, Campbell & Detweiler, Philadelphia, PA, for Pennland Ins. Co.

## *MEMORANDUM*

ROBERT F. KELLY, District Judge.

This action involves a determination of whether Third-Party Defendant Pennland Insurance Company ("Pennland") is required to provide insurance coverage arising out of a motor vehicle accident between Anna and James Thomas ("Plaintiffs"), and Michael J. Brown ("Brown"). Pennland has filed a motion for summary judgment which is presently before the Court. Plaintiffs and Brown agree that there are no genuine issues of material fact and have filed a joint cross-motion for summary judgment. For the rea-

sons that follow, Plaintiffs' Motion will be denied and summary judgment will be granted in favor of Pennland.

## I. *BACKGROUND*

On August 3, 1994, the Plaintiffs were seriously injured when the car in which they were driving was struck by a 1994 Ford Ranger pick-up truck ("Ford Ranger") driven by Brown and owned by his parents, Robert and Leonor Brown. On January 19, 1995, Plaintiffs brought suit against Brown in the United States District Court for the Eastern District of Pennsylvania. At the time of the accident, the Ford Ranger was insured through a business automobile policy issued by Great American Insurance Company ("Great American") to Robert and Leonor Brown. In addition to the coverage by Great American, Brown had his own personal automobile policy issued by Nationwide Insurance Company ("Nationwide"), although this policy covered a separate vehicle.

Defendant Brown tendered the defense of Plaintiffs' suit to Great American and Nationwide, both of which accepted coverage.[1] Great American subsequently paid the Plaintiffs $250,000, which represented the remainder of its policy limits.[2] The Plaintiffs also received $15,000 from Nationwide, which represented the limit on that policy. In consideration of the $265,000, Anna and James Thomas entered into a release, discussed below, and a stipulation to dismiss the civil action.

On November 24, 1995, the Plaintiffs filed a civil action directly against Pennland arguing that it was required to provide insurance coverage to Brown through a policy issued to Brown's parents. Pennland moved to dismiss the Complaint arguing that the Plaintiffs were strangers to the insurance contract at issue and, therefore, had no standing to sue. On June 27, 1996, Judge VanArtsdalen granted Pennland's Motion and dismissed the action with prejudice. *See Thomas v. Pennland Ins. Co.,* Civ. No. 95–7390, 1996 WL 379376 (June 27, 1996) (*"Thomas I"*) (holding that Plaintiffs lacked standing to sue).

Approximately one month later, on July 26, 1996, the Plaintiffs filed the present action against Brown. Brown subsequently filed a third-party complaint against Pennland seeking a declaration that he is entitled to coverage under the Pennland policy at issue. After the discovery period closed, Pennland filed a Motion for Summary Judgment which is now before the Court. Pennland raises a host of arguments in support of its Motion including the following: (1) the action is barred by the doctrine of res judicata; (2) the action is barred by the doctrine of collateral estoppel; (3) the March 9, 1996 Release extinguished Pennland's duty to indemnify Brown; and (4) the Plaintiffs cancelled coverage of the Ford Ranger prior to the accident.

## II. *STANDARD*[3]

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that

1. Although Brown was driving the Ford Ranger when the accident occurred, Nationwide accepted Brown's tender of defense to the action filed against him by Plaintiffs. At no point did Brown tender the defense of the suit to Pennland.

2. Great American had previously paid $50,000 of the $300,000 single policy limit to another claimant.

3. The applicable legal standards by which a court decides a summary judgment motion do not change when the parties file cross-motions for summary judgment. *Southeastern Pa. Transp. Auth. v. Pennsylvania Pub. Util. Comm'n,* 826 F.Supp. 1506 (E.D.Pa.1993), *aff'd,* 27 F.3d 558 (3d Cir.), *cert. denied,* 513 U.S. 928, 115 S.Ct. 318, 130 L.Ed.2d 279 (1994).

there is no genuine issue of material fact, then summary judgment is proper. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987).

## III. *DISCUSSION*

### 1. Res Judicata and Collateral Estoppel

Pennland maintains that Plaintiffs' Complaint is nothing more than a "thinly veiled attempt to thwart [Judge VanArtsdalen's] prior order which, consistent with Pennsylvania law, d[id] not allow [a] direct action[ ] against [Pennland]." (Pennland's Mem. at 7). Pennland goes on to argue that the sole role of Brown in this lawsuit is to act as a conduit to facilitate a direct action against Pennland—which had already been dismissed with prejudice by Judge VanArtsdalen. As a result of that decision, Pennland argues that res judicata bars the present suit.

The Pennsylvania Supreme Court has defined res judicata and collateral estoppel as follows:

> Res judicata, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same action.
>
> . . . . .
>
> ■ Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated. The identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full and fair opportunity to litigate the issue in question.

*Balent v. City of Wilkes–Barre,* 542 Pa. 555, 669 A.2d 309, 313 (1995) (citations omitted). The party wishing to invoke res judicata must show that: (1) the issues are identical; (2) there is an identity of causes of action; (3) there is an identity of persons and parties to the action; and (4) there is an identity of the quality or capacity of the parties suing or sued. *Zarnecki v. Shepegi,* 367 Pa.Super. 230, 532 A.2d 873, 877 (1987). In addition, "[i]t is axiomatic that in order for either collateral estoppel or res judicata to apply, the issue or issues must have been actually litigated and determined by a valid and final judgment." *County of Berks ex rel. v. Pennsylvania Labor Relations Bd.,* 544 Pa. 541, 678 A.2d 355, 359 (1996) (citing *Philadelphia Marine Trade Ass'n v. International Longshoremen's Ass'n,* 453 Pa. 43, 308 A.2d 98 (1973)).

■ Pennland's attempt to apply res judicata and collateral estoppel to this action is fatally flawed because the underlying issues were not addressed in the prior action. As stated by Judge VanArtsdalen:

> However, in this somewhat unusual case, there is a fundamental legal question as to whether the plaintiffs—the injured parties in a car accident—can maintain an action directly against the alleged tortfeasor's liability insurance carrier. Since for reasons I will outline below, I have concluded that the plaintiffs as a matter of law cannot maintain such an action. I will dismiss this action without addressing the merits of the claims and counterclaims.

*Thomas I,* 1996 WL 379376 at *3. Since it is evident that *Thomas I* dealt only with the Plaintiffs' standing to bring suit and not the underlying merits of the case, the doctrines of res judicata and collateral estoppel cannot be used by Pennland to bar the instant action.

### 2. The March 9, 1996 Release

■ As discussed above, on March 9, 1996, Anna and James Thomas entered into a release with Brown which included the following limitation:

> [E]xcept and provided, however, that the Browns are not released to the extent of any insurance coverage available to any of them through the Pennland Insurance Company or any subsidiary or affiliate thereof, or any other automobile liability insurance company (other than Nationwide

> and Great American Insurance Company) providing liability coverage for any claim resulting from the accident casualty or event which occurred on or about August 3, 1994 at or near Ocean City, New Jersey. If there is additional coverage, the Browns are not released until said coverage is exhausted. After any additional coverage is exhausted or if it is fully and finally determined by a court of law including any applicable appeal that there is no additional insurance coverage, then, in that event, the Browns will be forever released and discharged from all claims as stated herein.

(Release Dated March 9, 1996, Attached as Ex. "G" to Pennland's Mem.). Pennland maintains that this Release prevents Plaintiffs from executing against any of Brown's personal assets if Plaintiffs should obtain a judgment against Brown. Also, the underlying insurance policy provides that Pennland "will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." (Policy of Insurance at 2, Attached as Ex. "E" to Pennland's Mem.). Therefore, Pennland argues that since Brown cannot be legally obligated to pay any judgment, their duty to indemnify Brown is extinguished.

However, it is clear from the Release that the Plaintiffs were settling their claims against Brown for the primary insurance coverage then available. As stated above, the Release provides that "[i]f there is additional liability coverage, the Browns are **not released** until said coverage is exhausted." (March 9, 1996 Release) (emphasis added). Moreover, the Release also states that "[i]t is understood and agreed that the settlement in connection with which this Release is being executed is a partial compromise of disputed claims...." *Id.* Therefore, Pennland's argument that the March 9, 1996 Release somehow extinguishes their duty to indemnify Brown will fail.

### 3. Cancellation Of Coverage Under The Policy

The Pennland Insurance Policy at issue in this case originally provided coverage for the following vehicles: (1) a 1993 Plymouth van; (2) a 1979 Jeep; and (3) the 1994 Ford Ranger involved in the accident on August 3, 1994. The Policy also named as insureds, Robert J. Brown and Leonor Brown as well as their two sons, Robert J. Brown, III, and Michael Brown. On July 7, 1996, the Browns met with their insurance agent, Jeffrey McQuiston ("McQuiston"), at their home to discuss their insurance coverage. During this meeting, the Browns indicated their desire to remove the Ford Ranger and the 1979 Jeep from the Pennland Policy, and to remove Robert J. Brown, III, and Michael Brown as operators under that policy. *See* McQuiston Dep. at 42, 70–71, Attached as Ex. "M" to Pennland's Mem. As discussed below, the reason why Plaintiffs wanted to delete coverage under the Pennland Policy was because they had obtained a new insurance policy through Great American which covered the Ford Ranger and became effective on July 7, 1994.

In order to remove an automobile and/or an operator from coverage, an authorized representative of Pennland is required to place a line through the car and/or operators listed on the policy. On July 13, 1994, McQuiston's assistant, Caroline DiPaoli Miller ("Miller"), completed an Endorsement Request Form whereby she placed a line through the 1994 Ford Ranger, the 1979 Jeep, and the names of the Browns' two sons. Under the "Remarks" section of the Endorsement, Miller wrote "[d]elete vehicles nos. 2 and 3 (wrote separate business and assigned risk policy), delete operators 3 and 4." (Endorsement Request Form, Attached as Ex. "N" to Pennland's Mem.).

Miller signed the Endorsement and then attempted to input the information into a computer on or about July 13, 1994. However, due to a mistake in entering the information into the computer, Miller voided the computer transaction and instead sent the original form to Harleysville Insurance Company ("Harleysville") [4] on July 26, 1994. On August 5, 1994, Pennland issued an Amended Declarations Page to the Policy which reflected the deletions requested by Plaintiffs.

4. Harleysville is Pennland's parent company.

The effective date listed on the Amended Declarations was July 8, 1994. Plaintiffs argue that because the Amended Declarations had not been issued until after the accident, this Court should hold that coverage remained in effect until August 5, 1994.

In the case of *Blasy v. Chester County Mut. Ins. Co.,* 401 Pa.Super. 344, 585 A.2d 493 (1990), the Pennsylvania Superior Court reaffirmed its decision in *Coppola v. Insurance Placement Facility of Pennsylvania,* 386 Pa.Super. 413, 563 A.2d 134 (1989), *allocatur denied,* 525 Pa. 582, 575 A.2d 113 (1990), which held that "[a] cancellation by an insured is effective on the date the insured intends to cancel the policy, and not on the date that the insurance company receives notice of the cancellation[,] as long as the insured['s] manifested intent is clear and precise." *Id.* 585 A.2d at 495.

In *Blasy,* the Plaintiffs purchased a homeowner's insurance policy on August 1, 1986 which was set to expire a year later on August 1, 1987. In July of 1987, the Chester County Mutual Insurance Company ("Chester Mutual") sent a renewal notice to the Plaintiffs. However, the Plaintiffs failed to pay the renewal premium by the August 1, 1987 deadline. As a result, Chester Mutual mailed a notice to the Plaintiffs informing them that the policy would terminate on October 6, 1987 due to non-payment of premiums.

On August 3, 1987, the Plaintiffs' property sustained water damage. Three days later, on August 6, 1987, the Plaintiffs purchased insurance from another homeowner's insurance carrier. Thereafter, the Plaintiffs filed a proof of loss with Chester Mutual claiming that, pursuant to the cancellation notice, they were still covered until October 6, 1987. *Id.* 585 A.2d at 493–94. After reviewing the facts of the case, the court held that:

> The [Plaintiffs'] inaction in non-renewal of the Chester Mutual policy combined with the purchase of the [second homeowner's] policy, as well as the testimony evidencing the deliberate intention to obtain new coverage to supplant the old, are overt acts demonstrating the [plaintiffs'] clear intent not to renew their Chester Mutual policy.

*Id.* 585 A.2d at 495. As a result, the court held that the plaintiffs had demonstrated a clear intent to cancel the Chester Mutual policy on August 1, 1987.

In the present case, a review of the circumstances leading up to the change in the Pennland Policy clearly shows that the Browns intended to delete coverage for the Ford Ranger as of July 8, 1994, and to delete their son, Michael Brown, as an operator thereunder. For example, the cancellation was verbally requested by the Browns during their meeting with McQuiston. At his deposition, McQuiston testified as follows:

> Q: Was there a specific request by Robert and Leonor Brown to your agency that the effective date of this change, in fact, be July 8th of '94?
>
> A: Verbally, yes, absolutely. There's no reason to retain coverage on a Harleysville policy if removing covers [sic] two new policies.
>
> Q: But do you have a specific recollection, yourself, of Robert J. and/or Leonor Brown requesting that the Harleysville Insurance Company no longer insure the Ford truck or the jeep of a certain date?
>
> A: Yes, I do.
>
> Q: And that date was what again, sir?
>
> A: 7/7
>
> Q: 7/7 as opposed to 7/8?
>
> A: 7/7 is when I was with the insureds.

(McQuiston Dep. at 42–43).[5] As for the reason why the Browns cancelled coverage under the Pennland Policy, the Browns informed McQuiston that they did not want duplicate coverage on their vehicles:

> Q. I really want you to be clear on this. I don't want you to guess, and I don't want you to speculate. What, if anything, do you remember about telling the Browns about when coverage under the Harleysville policy would be cancelled, if any[thing]?

5. July 8, 1994 was listed as the effective date on the Policy because that was the day in which all the necessary paperwork was completed. *See* McQuiston Dep. at 41.

A: Well, the Browns indicated to me that there's no reason to cover a vehicle twice at the same time.

. . . . .

A: We both had an understanding that there was no reason to have duplicat[e] coverage.

*Id.* at 70–71.

The reason the Browns would have had duplicate coverage on the Ford Ranger is because, on July 7, 1994, they procured insurance coverage for the Ford Ranger through Great American.[6] Specifically, Leonor Brown issued a check to Great American in the amount of three-hundred and seven dollars ($307) which represented the initial premium for the Great American business automobile policy. After his visit with the Browns, McQuiston requested that Great American issue the business auto policy with an effective date of July 7, 1994. *See* Letter Dated July 7, 1994, Attached as Ex. "T" to Pennland's Mem. Robert J. Brown, III, and Michael J. Brown also completed an Assigned Risk Application for insurance coverage on the 1979 Jeep with McQuiston during the July 7, 1994 meeting. This policy was covered by Nationwide and became effective as of 12:01 a.m. on July 7, 1994. *See* Nationwide Policy, Attached as Ex. "D" to Pennland's Mem.

In addition, the Browns received a premium refund in the amount of one-thousand and ninety dollars ($1,090) from Pennland. This amount represented a return of premiums for coverage on the Ford Ranger and 1979 Jeep from July 8, 1994, through the end of the policy's term. *See* Dep. of Pennland Underwriter Stephen J. Robertson at 50, Attached as Ex. "V" to Pennland's Mem. This refund check was cashed by the Browns on or about August 16, 1994. *See* Copy of Cancelled Check, Attached as Ex. "U" to Pennland's Mem. The act of cashing the refund check shows that the Browns did indeed intend to delete coverage on the Ford Ranger.[7] Finally, Leonor Brown testified at her deposition that at the time of the accident on August 3, 1994, the Ford Ranger was exclusively covered under the Great American business automobile policy:

Q: Your testimony was that the Ford [Ranger] was insured through whom?

A: Great American.

Q: Great American?

A: Great American.

Q: Had it been insured, during your ownership, by any other company other than Great American?

A: Prior to July, it was insured by, I believe, Harleysville.

. . . . .

A: We informed Harleysville that we were dropping the [Ranger] at the time when we went with Great American.

Dep. of Leonor Brown at 27–31, Attached as Ex. "W" to Pennland's Mem.

Based on the above, the Browns' manifested a clear and precise intent to remove coverage for the Ford Ranger on July 7, 1994—the date they obtained new coverage through Great American. As a result, the cancellation became effective on July 7, 1994. *See Blasy,* 401 Pa.Super. 344, 585 A.2d 493 (1990). Since the Ford Ranger was not covered by Pennland on August 3, 1994, the date of the accident, Pennland is not liable for any

6. The original application with Great American for a business automobile policy for the Ford Ranger was completed on May 25, 1994. *See* Commercial Insurance Application, Attached as Ex. "P" to Pennland's Mem. After providing Great American with some additional information, McQuiston obtained quotes from Great American dated July 6, 1994 which he brought to the meeting with the Browns the next day.

7. The Browns acceptance of the refund check, along with the procurement of the new policy with Great American is sufficient evidence under Pennsylvania law of their intent to cancel coverage with respect to the Ford Ranger. As stated by the Pennsylvania Superior Court in the case of *Scott v. Southwestern Mut. Fire Ass'n,* 436 Pa.Super. 242, 647 A.2d 587 (1994):

> We recognize that the mere procurement of additional insurance by an insured does not necessarily evidence an intent to cancel the existing policy. Likewise, the mere nonpayment of a premium by the insureds does not evidence a specific intent to cancel the existing policy. When two or more of these factors are found to co-exist, however, there exists sufficient evidence of the insured's intent to cancel the prior insurance policy.

*Id.* 647 A.2d at 594.

damages arising from such accident and summary judgment will be granted in its favor.

## IV. *CONCLUSION*

Based on the foregoing discussion, Plaintiffs' Joint Cross–Motion for Summary Judgment will be denied and Pennland's Motion will be granted. Accordingly, I shall enter the following Order:

### *ORDER*

AND NOW, this 17th day of July, upon consideration of the parties' cross-motions for summary judgment, it is hereby ORDERED that Third–Party Defendant Pennland's Motion for Summary Judgment is GRANTED. Plaintiffs' Joint Cross–Motion for Summary Judgment DENIED.