# H.A.R.I.E. v. Lackawanna County

C.P. of Lackawanna County, No. 08 CV 961

MINORA, *J.*, Nov. 6, 2014—

## I. Introduction

### Background/Parties

The plaintiff in the initial action is the Housing and Redevelopment Insurance Exchange (hereinafter H.A.R.I.E.). It is an insurance business organized as an insurance indemnification reciprocal insurance exchange in the Commonwealth of Pennsylvania. It is by definition an unincorporated group of subscribers which act as both insurer and insured. There exists no ownership in a reciprocal insurance exchange. (*See* N.T. June 20, 2014

pp. 176-184). An attorney-in-fact (FOXCO) is legally required for both operational function and regulatory compliance.

The defendant Lackawanna County is a duly organized government, subdivision of the Commonwealth of Pennsylvania with its county seat located in Scranton, Pennsylvania.

Joseph Durkin individually and t/d/b/a JD Insurance Consultants is an individual licensed to sell insurance in the Commonwealth of Pennsylvania with a location in Clarks Summit, Lackawanna County, Pennsylvania. He was agent by virtue of a broker of record letter for the County of Lackawanna during the relevant time period.

Dominic Verrastro is an individual Ecensed to sell insurance in the Commonwealth of Pennsylvania. During the relevant time period, Mr. Verrastro was the insurance coordinator for the County of Lackawanna acting as an independent contractor pursuant to a written contract which defined his scope of duties.

## II. Procedural Background

On February 11, 2008, a declaratory judgment action was filed by the plaintiff, H.A.R.I.E., against the defendants, Lackawanna County and Joseph P. Durkin, in the Court of Common Pleas of Lackawanna County to the above term and number 2008 Civil 961.

In the declaratory judgment action, plaintiff, H.A.R.I.E.,

seeks declaratory relief regarding the alleged cancellation of a commercial property insurance policy, on January 15, 2007, retroactively effective to December 1, 2006, by the defendant, Lackawanna County, and/or their agent or combination of agents. The Commercial Property Insurance Policy at issue (HFP30652010506), issued by H.A.R.I.E., was effective July 15, 2006 and expiring on July 15, 2007. The one year premium was paid in full in advance.

A companion civil action exists of record filed by defendant, Lackawanna County, as a plaintiff against defendants, Dominic Verrastro, H.A.R.I.E., and Foxco. Said action was initiated by Lackawanna County via a writ of summons filed on February 7, 2008, with a complaint subsequently filed on April 2, 2008, in the Court of Common Pleas of Lackawanna County to term and number 2008 Civil 887.

On March 8, 2008, plaintiff, H.A.R.I.E., filed an amended declaratory judgment complaint in the Court of Common Pleas of Lackawanna County identical to the complaint that filed on February 11, 2008, with the addition of a notice to plead.

On March 28, 2008, April 1, 2008 and May 12, 2008, original defendants, Michael J. Washo, Corey D. O'Brien, A.J. Munchak, Joseph P. Durkin, and Robert C. Cordaro, filed preliminary objections respectively to plaintiff, H.A.R.I.E's, amended declaratory judgment complaint.

On May 19, 2008, plaintiff; H.A.R.I.E., filed preliminary objections to defendant, Robert C. Cordaro's, preliminary objections.

On June 2, 2008, defendant, HA.R.I.E., filed a writ of summons to 2008 Civil 887 seeking to join Joseph P. Durkin, individually and t/d/b/a JD Insurance Consultants as an additional defendant.

On April 21, 2008 and April 23, 2008, plaintiff H.A.R.I.E., Foxco and Dominic Verrastro, filed preliminary objections respectively to defendant, Lackawanna County's complaint filed in the Court of Common Pleas of Lackawanna County to term and number 2008 Civil 887.

On May 9, 2008, the defendant, Lackawanna County, filed preliminary objections to plaintiff, H.A.R.I.E., Foxco and Dominic Verrastro's preliminary objections.

On May 19, 2008, and May 23, 2008, plaintiff; H.A.R.I.E., and Foxco and Dominic Verrastro, filed answers to the defendant, Lackawanna County's new matter which was contained within Lackawanna County's preliminary objections to plaintiff, H.A.R.I.E., Foxco and Dominic Verrastro's preliminary objections that Lackawanna County filed of record on May 9, 2008.

With the matter being appropriately briefed by the parties, oral argument was conducted before the undersigned on July 14, 2008, regarding original defendants' Michael J. Washo, Corey D. O'Brien, A.J. Munchak, Joseph P.

Durkin and Robert C. Cordaro's, preliminary objections to plaintiff, H.A.R.I.E.'s, amended declaratory judgment complaint along with plaintiff, H.A.R.I.E., Foxco and Dominic Verrastro's preliminary objections to defendant, Lackawanna County's Civil Complaint (2008 Civil 887).

Pursuant to oral argument conducted before this honorable court on July 14, 2008, the undersigned issued an opinion and order dated August 29, 2008.

Pursuant to this court's opinion and order dated August 29, 2008, as relates to 2008 Civil 961, this court sustained and granted defendants' Michael J. Washo, Corey D. O'Brien and A.J. Munchak's preliminary objection I and dismissed defendants, Commissioner's O'Brien, Washo and Munchak as individual defendants from the action. This court dismissed and denied defendants', Michael J. Washo, Corey D. O'Brien and A.J. Munchak's preliminary objection II regarding the pendency of a prior action. This court further sustained and granted defendant, Robert C. Cordaro's preliminary objection I and dismissed defendant Robert C. Cordaro, as an individual defendant from the action.

Pursuant to this court's opinion and order dated August 29, 2008, as relates to 2008 Civil 887, this court ruled as follows as relates to H.A.R.I.E.'s preliminary objections:

Count I — breach of contract — dismissed and denied.

Count II — bad faith, 42 Pa. C.S.A. § 8371 — sustained

and granted to the extent that averments relating to the Uniform Insurance Practices Act (UIPA) are stricken from the complaint.

Count III — Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P. S. §201-1 — sustained and granted.

Count IV — negligence and breach of fiduciary duty — dismissed and denied.

Count V — respondeat superior — dismissed and denied.

Court denied H.A.R.I.E.'s preliminary objections pursuant to Pa. R.C.P. 1028(a)(2) and Pa. R.C.P. 1028(a)(5) for failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter and for lack of capacity to sue, non-joinder of a necessary party, or mis-joinder of a cause of action.

As relates to defendant Foxco's preliminary objections, this court ruled as follows:

Count VI-breach of contract — dismissed and denied.

Count VII-bad faith, 42 P.S. C.S.A. §8371 — sustained and granted to the extent that averments relating to the Uniform Insurance Act are stricken from the complaint.

Count VIII — Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL) — sustained

and granted.

Count IX — negligence and breach of fiduciary duty — dismissed and denied.

Count X — respondeat superior — dismissed and denied.

This court further denied defendant, Foxco's preliminary objections pursuant to Pa. R.C.P. 1028(a)(2) and Pa. R.C.P. 1028(a)(5) for failure of a pleading to conform to law or rule of court, or inclusion of scandalous or impertinent matter and for lack of capacity to sue, non-joinder of a necessary party or misjoinder of a cause of action.

This court dismissed and denied defendant, Dominic Verrastro's preliminary objections to Count 11, specifically, I and HI as relates to Pa. R.C.P. 1028(a)(2) and 1028(a)(5) and sustained in part, defendant, Dominic Verrastro's preliminary objections II as relates to the Unfair Insurance Practices Act (UIPA).

Pursuant to this honorable court's August 29, 2008 opinion and order, discovery for actions 2008 Civil 887 and 2008 Civil 961 was consolidated.

Pursuant to this honorable court's directive in its opinion and order dated August 29, 2008, as relates to 2008 Civil 887, plaintiff, H.A.R.I.E., filed a praecipe for reissuance of a writ of summons on September 10, 2008, seeking to join

as an additional defendant, Joseph P. Durkin, Individually and t/d/b/a JD Insurance Consultants.

On December 17, 2008, defendant, Lackawanna County, filed their answer to plaintiff, H.A.R.I.E.'s amended declaratory judgment complaint.

On January 9, 2009, defendant Joseph P. Durkin, filed his answer with new matter to plaintiff, H.A.R.I.E.'s amended declaratory judgment complaint to which plaintiff H.A.R.I.E., filed its answer to defendant, Joseph P. Durkin's new matter on April 20, 2009.

On October 20, 2008, plaintiff, H.A.R.I.E. and Foxco, filed their answers with new matter and counterclaim to defendant, Lackawanna County's civil complaint filed to term number 2008 Civil 887. Defendant, Dominic Verrastro filed his answer with new matter to defendant, Lackawanna County's civil complaint on October 17, 2008.

On November 10, 2008, defendant, Lackawanna County, filed an answer to plaintiff, H.A.R.I.E.'s and Foxco's new matter along with preliminary objections to plaintiff, H.A.R.I.E. and Foxco's respective counterclaims filed to term number 2008 Civil 887. Plaintiff, H.A.R.I.E. and Foxco filed their respective answers to defendant, Lackawanna County's preliminary objections on November 26, 2008.

With the matter having been appropriately briefed

by the parties, oral argument was conducted before the undersigned on March 5, 2009.

Pursuant to oral argument conducted before this court on March 5, 2009, this court issued another opinion and order dated June 4, 2009.

Pursuant to this court's opinion and order dated June 4, 2009, the preliminary objections of defendant, Lackawanna County, were granted and plaintiff H.A.R.I.E. and Foxco's Counterclaims were dismissed either due to voluntary withdrawal or by the court's ruling therein.

Extensive discovery has since been conducted and completed by all interested parties including the submission of interrogatories, requests for production of documents, requests for admissions, issuance of subpoenas, obtaining of affidavits and the taking of numerous oral examinations under oath.

A non-jury trial was held from June 18, 2014 through June 23, 2014. Pending completion of the written transcripts and with deference to medical issues relative to one attorney findings of fact and conclusions of law were to be filed by September 30, 2014. That having been done, the matter is now ripe for decision.

### III. Undisputed Stipulation of Facts

1. At all times relevant and material hereto, H.A.R.I.E., through FOXCO, its attorney-in-fact, issued a policy of commercial property insurance to Lackawanna County,

policy number HFP 30652010506, insuring *inter alia*, the Toyota amphitheater/pavilion owned by Lackawanna County located on Montage Mountain in Lackawanna County, Pennsylvania for a policy period between July 15, 2006 and July 15, 2007.

2. Lackawanna County Montage Ski Area is the first Named Insured on the commercial policy at issue, policy HFP 30652010506.

3. The mailing address of Lackawanna County Montage Ski Area, the first Named Insured on the commercial policy at issue, policy number HFP 30652010506, as shown in the declarations page of the commercial property policy is Montage Mountain Road, P.O. Box 3539, Scranton, Lackawanna County, Pennsylvania 18505.

4. The commercial property policy at issue also covered various other buildings and equipment owned by Lackawanna County on montage mountain, Lackawanna County, Pennsylvania including, but not limited to, the Montage Ski Area, a property separate and distinct from the Toyota Pavilion/Amphitheater owned by Lackawanna County and insured under the same commercial property policy.

5. The building/equipment schedule of the commercial property declarations page of the commercial property policy issued to Lackawanna County by H.A.R.I.E., policy number HFP 30652010506, specifically lists the

amphitheater at issue as an insured asset.

6. On November 6, 2006, a closing occurred, at which closing Lackawanna County sold the Montage Ski Area to Sno Mountain L.P. [*sic*].

7. That no representatives of H.A.R.I.E. and/or FOXCO were present at or about November 6, 2006 closing and sale of Montage Mountain Ski Area to Sno Mountain, LLC.

8. That attorney James Tressler was the transactional attorney for Lackawanna County at or about the November 6, 2006 closing and sale of Montage Mountain Ski Area to Sno Mountain, LLC.

9. Lackawanna County did not convey or sell the Toyota Pavilion/Amphitheater property covered under the commercial property policy at issue on November 6, 2006, or at any other time relevant and material to this action.

10. That the premium invoice for the commercial property policy at issue was forwarded by H.A.R.I.E. to Joseph Durkin prior to the commencement of the policy period, July 15, 2006.

11. That at all times relevant to the current action, Dominic Verrastro, was the contracted Lackawanna County Insurance Coordinator.

12. That Dominic Verrastro was not the attorney-in-fact for H.A.R.I.E. nor was he responsible for the

active management of H.A.R.I.E.'s insurance business and was not charged with the responsibility of the daily management of H.A.R.I.E. or with providing insurance expertise and data processing facilities for the necessary record keeping and reporting required of H.A.R.I.E.

13. On or about February 14, 2007, the Toyota Pavilion/ Amphitheater owned by Lackawanna County sustained storm damage as a result of a severe snow storm which occurred in Northeast Pennsylvania on that date.

14. That on or about February 23, 2007, a meeting was conducted and held between Dominic Verrastro, Charles J. Volpe, Jr., Esquire and then Majority Commissioner, Robert C. Cordaro.

15. That on March 5, 2007, H.A.R.I.E. forwarded correspondence to Joseph Durkin which contained copies of the four (4) notices of cancellation dated January 15, 2007, including the notices of cancellation for the commercial property, crime, inland marine and fidelity bond policies, the invoice to Joseph Durkin for the return date of unearned commission associated with the commercial property policy totaling seven thousand six hundred eighty dollars and fifty-two cents ($7,680.52) along with the unearned premium refund check (#0000008615) payable to Lackawanna County in the amount of fifty six thousand three hundred thirty-six dollars ($56,336.00).

16. The applicable cancellation endorsement of the

Commercial Property Policy issued to Lackawanna County by H.A.R.I.E., policy number HFP 30652010506, is found in Endorsement IL 02 46 07 02, a two (2) page endorsement entitled, "Pennsylvania changes — cancellation and nonrenewal."

17. That upon receipt of the March 5, 2007 correspondence and relevant enclosures, Joseph Durkin forwarded the notices of cancellation dated January 15, 2007, and the unearned premium refund check (#0000008615) in the amount of fifty six thousand three hundred thirty-six dollars ($56,336.00), to Lackawanna County.

18. That on March 22, 2007, Joseph Durkin tendered his personal check (#103) to H.A.R.I.E. in the amount of seven thousand six hundred eighty dollars and fifty-two cents ($7,680.52) representing reimbursement of his unearned commission for the commercial property policy at issue.

19. That H.A.R.I.E.'S return premium check (#0000008615) to Lackawanna County in the amount of fifty six thousand three hundred thirty-six dollars ($56,336.00) was endorsed by then chief of staff Paul Taramelli and then Lackawanna County Commissioner AJ Munchak.

20. That on March 22, 2007, Lackawanna County negotiated and deposited H.A.R.I.E.'s return premium

check (#0000008615) in the amount of fifty six thousand three hundred thirty-six dollars ($56,336.00) into its general fund account at PNC Bank.

21. That not until January 2008, was there further contact and communications between Lackawanna County and H.A.R.I.E. regarding the February 14-15, 2007, loss at the Toyota Pavilion Amphitheater.

22. That on January 7, 2008, Michael Washo and Corey O'Brien were inaugurated as Lackawanna County Majority Commissioners thereby assuming majority control of Lackawanna County government

23. That on January 7, 2008, Mr. Richard Jones was appointed as Deputy Director of Insurance and Risk Management for Lackawanna County.

24. That on January 17, 2008, Mr. Richard Jones forwarded correspondence to H.A.R.I.E. titled "written notice of loss" seeking one million six hundred twenty-nine thousand two hundred sixty-two dollars and thirty-six cents ($1,629,262.36) for the loss that occurred at the Toyota Pavilion Amphitheater on February 14-15, 2007.

25. That on January 29, 2008, Jack Judge, then claims manager for H.A.R.I.E. forwarded correspondence in response to Mr. Jones' January 17, 2008 "Written Notice of Loss" advising Mr. Jones, *inter alia*, that there would be no adjustment of the claim for the February 14-15, 2007 collapse of the Toyota Pavilion Amphitheater as the

commercial property policy at issue had been cancelled prior to the loss.

26. That on February 4 and February 6, 2008, Charles J. Volpe, Jr., Esquire, attorney-in-fact for H.A.R.I.E. forwarded correspondence to Mr. Richard Jones and the Lackawanna County Commissioners providing, *inter alia*, additional explanation of the facts and circumstances surrounding the cancellation of the commercial property policy at issue prior to the loss of February 14-15, 2007.

IV. Court's Findings of Fact and Conclusions of Law

1. When you combine these two causes of action, what you have at its core is a dispute over the viability and validity of an alleged cancellation of the commercial property insurance policy covering the loss which occurred at the Toyota Pavilion/Amphitheater on or about February 14 or 15, 2007.

2. During the period of time when the Toyota Pavilion/Amphitheater sustained what would have been a covered loss under the policy, if in force, supposedly an action to cancel the same governing policy of commercial property insurance was allegedly completed. We find the cancellation of the policy validly completed on or about January 15, 2007 before the covered loss occurred on or about February 14, 2007.

3. On or about February 14, 2007, the date of the loss, the policy was cancelled even though the policy

termination process remained incomplete. Accordingly, H.A.R.I.E. had no duty to its former insured, Lackawanna County to cover the loss. *See* cancellation and nonrenewal IL 02 46 07 02. (*See* H.A.R.I.E. Exhibit F).

4. Due to the sale of montage mountain by Lackawanna County, a total of four insurance policies were to be discontinued, cancelled or terminated by various methods including non-payment of premiums.

Commercial Policy: Policy Number — HFP 30652010506

Inland Marine: Policy Number — HIM 30652090506

Fidelity Bond: Policy Number — HFP 306522300506

Crime: Policy Number — HCR 30652260506

5. All policies including the commercial policy at issue were subsequently discontinued, cancelled or terminated by various methods including non-payment of premiums.

6. The other policies collective terminations are not at issue since their coverage is not implicated in our facts, however, the near contemporaneous end of those unrelated policies is independent corroborative evidence of the timeline relative to the cancellation of the commercial property policy at issue.

7. The contents of two letters authorized by Dominic Verrastro dated December 1, 2006 and January 5, 2007

would seem to support the county's efforts to terminate general liability insurance coverage by Nautilus on the dates indicated. (*See* H.A.R.I.E.'s Exhibits K and L).

8. Both letters had errors relative to the incorrect insurance policy numbers referenced therein rendering them ineffective at achieving their stated purpose.

9. While the initial impetus for commencing the notice of cancellation may be a disputed fact, this court finds the testimony of Dominic Verrastro credible in that the newspaper article regarding the montage mountain sale as seen on Paul Johnson's desk on or about November or December 2006 started Durkin and H.A.R.I.E.'s investigations of the need to cancel insurance coverage. Time here is not of the essence as either month is well before the date of loss.

10. When Mr. Verrastro and Mr. Johnson were unable to determine the proper course of action, it was agreed that Mr. Verrastro would call Mr. Joseph Durkin for advice on how to proceed since he was perceived as the County's agent or broker of record.

11. By any legal or factual measure, Mr. Durkin was the independent insurance agent/broker representing Lackawanna County, the insured, on this policy. First, he is a licensed insurance agent in Pennsylvania. Second, Mr. Durkin had a broker of record letter signed by Commissioner Cordaro relative to related insurance

policies. Third, he received correspondence, invoices, bills and serviced the montage mountain policies such securing premium payments and procuring verification of statement of values. Fourth upon policy cancellation, Mr. Durkin returned related unearned commissions in March of 2009 after the loss occurred. Therefore, this court finds both legally and factually, Mr. Durkin was the agent/broker solely responsible for acting on behalf of the insured, Lackawanna County, relative to the H.A.R.I.E. montage mountain policy and related policies covering the relevant 2006-2007 time frame. (*See* H.A.R.I.E. Exhibit T and W).

12. Dominic Verrastro was, during the relevant time frame, an independent licensed Pennsylvania insurance agent with an office in the Volpe/FOXCO/ H.A.R.I.E. premises. Additionally, he was also the independent insurance coordinator for Lackawanna County during the relevant time frame. His scope of services within the independent contractor agreement are outlined at paragraph three (3) and specifically exclude, "However *nothing herein shall place a duty upon the coordinator to offer any professional advice as to the necessity or appropriateness of coverage, which shall be the sole responsibility of the designated agent for that particular coverage.*" (*See* paragraph three (3) H.A.R.I.E. Exhibit H). Emphasis added.

13. Therefore, pursuant to this proviso, the responsibility to offer professional advice as to the necessity or

appropriateness of insurance coverage shall be the sole responsibility of the designated agent, to wit Joseph Durkin for the Lackawanna County montage mountain policies.

14. Returning to number ten (10), pursuant to the newspaper article regarding the sale of montage mountain and conversation that Mr. Verrastro has with Paul Johnson, Mr. Verrastro then called Mr. Durkin the agent on the H.A.R.I.E. montage mountain insurance policy.

15. In the relative short term, Mr. Verrastro teaches Mr. Durkin and Mr. Durkin advised Mr. Verrastro that he needed to consult with attorney James Tressler who handled the realty sales transaction of montage mountain as well as the sale of related buildings and equipment.

16. Shortly thereafter, Mr. Durkin returns the phone call to Mr. Verrastro confirming that the sale was fully concluded. There is vehement dispute between attorney Tressler and Mr. Durkin as to the nature and substance of their phone call The reality is that it matters little. Assume *arguendo* that attorney Tressler may have ill advised Mr. Durkin regarding insurance coverage. There was no attorney client relationship nor any contractual relationship between attorney Tressler and Mr. Durkin which was ever entered into evidence. Second, the sole responsibility for dealing with these insurance policy coverage issues rested with Mr. Durkin, the agent/broker for Lackawanna County. (*See* H.A.R.I.E. Exhibit H).

17. We find that attorney Tressler solely advised Mr. Durkin that the sale of montage mountain and related property was consummated and that the County's ownership interest in the sold assets had ceased.

18. Based upon Mr. Durkin's call with attorney Tressler, Mr. Durkin returned his call to Mr. Verrastro and advised Mr. Verrastro that the sale of montage mountain to Sno Mountain was complete. Both parties to these conversations Mr. Durkin and Mr. Verrastro shared a recognition that once the sale was complete, Lackawanna County no longer possessed an ownership interest in montage and therefore, also no longer had an insurable interest in montage and therefore, it was in the insured Lackawanna County's interest to modify coverage.

19. What both parties to these conversations failed to recognize was that included in the schedule of insured assets on the H.A.R.I.E./montage mountain policy was also the subset of the Toyota Pavilion/Amphitheater and related assets. This failure to scrutinize the schedule of insured assets on the policy for the remaining subset of unsold assets related to the Toyota Pavilion/Amphitheater meant that the insured, Lackawanna County, through its agent, Mr. Durkin, would be cancelling insurance on both the sold montage mountain assets and erroneously cancelling insurance coverage on the remaining unsold assets, of the Toyota Pavilion/Amphitheater.

20. Guided by the misinformation, Mr. Durkin as

the authorized agent for Lackawanna County directed Mr. Verrastro, who by contract, could not offer any professional advice as to the necessity or appropriateness of insurance coverage, to cancel the related policies, Mr. Verrastro did as directed by Mr. "Durkin and began the policy cancellation process.

21. This all occurred between December 1, 2006 and January 15, 2007.

22. We can be fairly confident of the December 1, 2006 date because a dated letter, erroneously sent on FOXCO letterhead and signed by Dominic Verrastro as Lackawanna County insurance coordinator was generated. This letter has been altered by handwriting indicating that the policy number thereon is incorrect The purpose of the letter was to cancel a related non H.A.R.I.E. general liability insurance policy issued by Nautilus, a general liability policy on montage mountain. The requested effective date was December 1, 2006. This would be less than a month after the November 6, 2006 sales transaction transferring ownership of montage mountain. The regarding on the letter stated, "Insurance for Montage Mountain SH Area Lackawanna County." (*See* H.A.R.I.E. Exhibit K).

23. The testimony of Caryn Czarkowski Emiliani also supported the December 1, 2006 chronology. When asked to estimate the time frame she responded. "It was somewhere around December 1, 2006. I don't recall the exact date." (*See* N.T. p. 200 Ins. 6-7).

24. Ms. Emiliani also indicated that she typed the December 1, 2006 FOXCO letter signed by Dominic Verrastro, but dictated to her by Joseph Durkin. (*See* N.T. p. 201 lns. 18-25, p. 202 lns. 1-24).

25. Ms. Emiliani goes on to indicate that on that same date and at that same place and time she believes that Joseph Durkin returned the H.A.R.I.E. policies to Dominic Verrastro. (*See* N.T. p. 203 lns. 12-25, p. 204 lns. 1-19).

26. The return or surrender of the H.A.R.I.E. commercial property policy for montage mountain from Joseph Durkin to Dominic Verrastro effectively commences the cancellation process by the insured, Lackawanna County. In the insurance industry, the surrender or return of an insurance policy from an insured (or their agent) to an insurer is tantamount to an insured's request for policy cancellation. Accordingly, the H.A.R.I.E./montage insurance policy cancellation is initiated by the insured, Lackawanna County through its agent/broker, Joseph Durkin.

27. This policy cancellation process has an internal component relative to the H.A.R.I.E. policy as well as an external component relative to other policies which were also insuring montage mountain and the Toyota Pavilion/ Amphitheater.

28. The policy cancellation task was poorly handled because there were a number of variations from insurance

industry best practices.

29. First of all, the December 1, 2006 Nautilus letter was sent on FOXCO letterhead making the letterhead inherently inconsistent with Dominic Verrastro as signatory in his role as the Lackawanna County insurance coordinator. In other words, the signatory and the letterhead did not match. Second, apparently the wrong policy number was also inserted negating the effectiveness of this document's stated purpose in attempting to cancel the Nautilus general liability policy.

30. Ms. Emiliani relinquished possession of the December 1, 2006 letter dictated by Mr. Durkin and signed by Dominic Verrastro to Joseph Durkin when it was typed. (*See* N.T. p. 205 Ins. 1-25, p. 206 In. 1).

31. This December 1, 2006 letter is more noteworthy for its chronological value than its substantive value as a poorly executed unsuccessful attempt to cancel the Nautilus general liability policy. (*See* H.A.R.I.E. Exhibit K).

32. Insurance industry standard forms are utilized for cancellation of all types of insurance policies. These forms exist and represent best practices within the industry. (*See* H.A.R.I.E. Exhibit N).

33. H.A.R.I.E. Exhibit N is entitled, "cancellation request/policy release." It is dated July 5, 2005. The producer is Volpe Insurance Agency. The insurer us Willis

of New Hampshire, Inc. The policy type is commercial. The policy number is noted. The cancellation date is July 15, 2005. The policy term as originally written is effective December 17, 2004 to December 17, 2005. All the essential needed information is requested by the form. Below this is a separate section that works alternatively. You can make a cancellation request with a policy surrendered and attached or you can make your cancellation request with an executed policy release statement. The statement notes that the policy is either lost, destroyed or is being retained and that no claims of any type will be made against the insurer or its agents or representatives after the date of cancellation noted above.

34. For some unknown reason, an ACORD form as noted was never introduced into evidence showing its usage for cancelling the H.A.R.I.E. montage mountain commercial property policy at issue.

35. The only conclusion that can be drawn from this absence is that the ACORD form was not utilized for our subject cancellation. This is confirmed by Dominic Verrastro's notes of testimony. (*See* N.T. p. 160, lns. 9-25, p. 161, lns. 1-5).

36. This variance from industry standard best practices is the fountain head for our dispute. Had such an industry standard ACORD form been used such as is illustrated at H.A.R.I.E. Exhibit N, our timeline would be indisputable, not subject to debate and our information would be

complete.

37. Within H.A.R.I.E. at least commencing on or about December 1, 2006, a number of matters begin somewhat simultaneously that bear on cancellation of the montage policies.

a.) After the late Paul Johnson and Dominic Verrastro speak, Mr. Verrastro calls Mr. Durkin who appears at H.A.R.I.E. with the policies and dictates to Ms. Emiliani the December 1, 2006 letter on FOXCO letterhead. (*See* H.A.R.I.E. Exhibit K).

38. Additionally, there is a second attempted cancellation of the Nautilus general liability policy is embodied in a second letter dated January 5, 2007. (*See* H.A.R.I.E. Exhibit L).

39. This Exhibit L letter has a corrected addressee. In H.A.R.I.E. Exhibit K, the addressee is JD Insurance Consultants for Mr. Joseph Durkin. In H.A.R.I.E. Exhibit L, the addressee is Insurance Markets Agency, Inc. The *re* or regarding is identical in both exhibits. The purpose is identical, that is to cancel the Nautilus general liability policy once again using the identical erroneous policy number on both Exhibits K and L. At Exhibit L, they added an effective term of the policy into the body of the letter from. "... an effective date of July 15, 2005 to July 15, 2007." Both request the cancellation date be effective December 1, 2006.

40. The fact that the second letter, Exhibit L dated January 5, 2007, is even necessary tells us that the first letter of December 1, 2006 was not able to accomplish its stated purpose of cancelling the Nautilus general liability policy. All of these matters would have been addressed in a properly completed ACORD form per H.A.R.I.E. Exhibit N.

41. Internally, these cancellation processes once begun by Lackawanna County are proceeding with H.A.R.I.E., the insurer. According to Joanne Dodgson per her testimony and her affidavit at H.A.R.I.E. Exhibit P, Paul Johnson, as an underwriter, placed hard copies of cancellation endorsements for the H.A.R.I.E./montage policy at issue into the interoffice mail directed from Mr. Johnson to Ms. Dodgson. Mr. Johnson's cancellation endorsements, which were never introduced into evidence, were to be inputted into H.A.R.I.E.'s EPF system by Ms. Dodgson.

42. Once Ms. Dodgson inputs the cancellation endorsements from the late Paul Johnson into the EPF system, if there is a credit, the EPF system generates a dummy check. Ms. Dodgson next sends the dummy check to accounts payable for further review and processing and the generation of a real refund check if appropriate. Finally, Ms. Dodgson indicated that the EPF system then generates notices of cancellation of which she sent copies to Mr. Durkin, as agent and as she always does, in other words, as is her normal procedure and practice. (*See*

H.A.R.I.E. Exhibit P).

43. Although Mr. Durkin denies receipt of the notices of cancellation, we are convinced that these notices were generated and sent on or about January 15, 2007 as dated because the testimony indicates if the dates were modified, the system would allow it but it would also indicate the earlier dates as well as the modified dates. No such date modifications appear on the notice of cancellation. (*See* H.A.R.I.E. Exhibit Q).

44. These notices of cancellation admittedly cite an inaccurate reason for cancellation indicating that the property was sold. We know the Toyota Pavilion was not sold, but such an error does not void the cancellation. There is no dispute that the roof collapse of the Toyota Pavilion/Amphitheater occurred around February 14 or 15, 2007 and this is our date of loss.

45. One might think that we need not proceed any further since we have found notices of cancellation generated on January 15, 2007 and a date of loss subsequent thereto on or about February 14 or 15, 2007. Such a premature view would ignore a needed contractual analysis of the insurance policy being conducted and then placed on our time frame.

The Insurance Policy

46. The H.A.R.I.E. insurance policy document governing the transactional relationship between

Lackawanna County Montage Ski Area as first named insured and H.A.R.I.E. as insurer was prepared by H.A.R.I.E. with due deference to statutory and regulatory legal requirements.

47. The language in endorsement number IL 02 46 07 02 entitled, "Pennsylvania Changes — cancellation and nonrenewal" governs the cancellation process for the subject policy and all related policies since the endorsement is tailored to meet the legal prerequisites for cancellation of insurance within the Commonwealth of Pennsylvania.

48. As noted earlier, the factual circumstances giving rise to the need for this insurance policy to be cancelled were that on or about November 6, 2006, Lackawanna County sold the montage mountain SH Area only and not the Toyota Pavilion/Amphitheater to a private purchaser, thus relinquishing County ownership and insurable interest in the sold assets only.

49. At the time of the cancellation's effective date, the policy had been in effect greater than sixty (60) days.

50. The annual premium had been paid one year in advance in July of 2006 purchasing coverage on montage effective July 15, 2006 and expiring on July 15, 2007 but for the intervening sale of the ski mountain. Accordingly, there is no allegation of non-payment of premium.

51. The policy cancellation is generated by Lackawanna County Montage Ski Area the named insured through its

agent/broker, Mr. Durkin, and not from the insurer due to the insured's sale of the ski mountain.

52. For these reasons, some portions of Endorsement IL 02 46 07 02 encompassing the Pennsylvania changes related to cancellation and nonrenewal are not implicated by our facts.

53. Provision A.1 of the endorsement above reads as follows:

"A. The cancellation common policy conditions is replaced by the following:

CANCELLATION

1.) The first named insured shown in the declarations may cancel this policy by writing or giving notice of cancellation.

54. Our facts have, per number 26, determined that Joseph Durkin began, initiated and commenced cancellation of the H.A.R.I.E./montage mountain policy by surrender or by return of policies, therefore, giving notice of cancellation for the county on or about December 1, 2006.

55. Provision A2 deals with insurer cancellation of policies in effect for less than sixty (60) days. Provision A2 is not implicated in our fact pattern for two reasons. First, our policy was in effect for greater than sixty (60) days and second, our insured Lackawanna County's conduct

is precipitating cancellation not the insurer (H.A.R.I.E.'s) conduct. This distinction is critical because depending on who starts the cancellation process different rules may apply.

56. Provision A3 deals with cancellation of policies in effect greater than sixty (60) days like ours, but deals with proper reasons for insurer not insured to cancel. Since we have found in our scenario the first named insured started the cancellation process, the Provisions A3 (a) through A3(f) inclusive cannot apply.

57. An unlabeled paragraph between A3(f) and A4 deals with fraudulent actions by the insured at the time that the insurance policy was obtained. It does not apply to our facts.

58. Endorsement provisions A4, A5, A6 and A7 all deal with notice of cancellation and apply to our facts.

59. All of the "B" provisions deal with nonrenewal or premium increases by the insurer and not the insured and therefore, cannot apply.

60. Provisions A4, A5, A6 and A7 read as follows:

"4. We will mail or deliver our notice to the first named insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of

cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first named insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first named insured cancels, the refund may be less than pro rata and will be returned within 30 days of cancellation. *The cancellation will be effective even if we have not made or offered a refund.* Emphasis added. (Tellingly, this emphasized portion is deleted in Lackawanna County's proposed findings of fact and conclusions of law). (*See* pg. 9).

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

61. Provision A4 is implicated in our fact pattern. "We" refers to H.A.R.I.E., the insurer and author of the contract "notice" refers to the notice of cancellation. Per the provision H.A.R.I.E. will mail or deliver their notice of cancellation to the first named insured's last mailing address known to H.A.R.I.E. Notice of cancellation will state the specific reasons therefore, Lackawanna County Montage Ski Area was the first named insured on the policy. The last known mailing address was montage mountain Road, P.O. Box 3539, Scranton, Pennsylvania 18505. This provision was never complied with by H.A.R.I.E. Additionally, an erroneous reason for cancellation was noted, "no longer

owned by Lackawanna County." The Toyota Pavilion/ Amphitheater remained owned by Lackawanna County as it was never sold with Montage Ski Mountain. H.A.R.I.E. says our service on agent/broker Joseph Durkin acting for Lackawanna County is legally sufficient. Lackawanna County insists that a lack of strict compliance voids the cancellation thereby rendering the loss covered.

62. 40 P. S. § 3402 entitled, "grounds for vancellation," covers cancelling in midterm a policy covering commercial property and casualty much like our case. It notes that midterm cancellation is prohibited for any reason other than a series of eight exceptions noted therein. Exception number 40 P.S. § 3402(6) states, "The insured has requested cancellation." We have concluded in our facts that Joseph Durkin agent/broker for Lackawanna County with sole responsibility for the H.A.R.I.E. montage policy had made such a request by policy surrender to H.A.R.I.E. on or about December 1, 2006. (*See* court's findings of fact and conclusions of law number 26). Therefore, a legally valid request for cancellation was requested by the County.

63. 40 P.S. § 3403 entitled, "notice requirements for midterm cancellations and nonrenewals," notes the required conduct and in processing and contest of a valid notice of cancellation or nonrenewal. Per 40 P.S.§ 3403(a) (1), it states:

"(1) The midterm cancellation or nonrenewal notice

*shall be* forwarded by registered or first class mail or delivered by the insurance company, directly to the named insured or insureds." Emphasis added. (Shall be represents compulsory language).

64. 40 P.S. § 3403(2) relates to advance written notice of nonrenewal by an insurer as opposed to an insured's request for cancellation and as such is not applicable to our facts.

65. 40 P.S. § 3403(3) Covers exceptions to when written notice of cancellation is required and it states as follows:

"(3) Written notice of cancellation in the manner prescribed in this section must be forwarded directly to the named insured or insured at least sixty (60) days in advance of the effective date of termination unless one or more of the following exist"

Subparagraphs 40 P.S. § 3403(a)(3)(i) and (ii) deal with material misrepresentations and failure to pay a premium when due and are therefore, not implicated by the facts in our case. However, subparagraph 40 P.S. §3403(a) (3) (iii) is quite applicable and it reads as follows:

"(iii) The policy was cancelled by the named insured, in which case *written notice of cancellation shall not be required* and coverage shall be terminated on the date requested by the insured." Emphasis added.

Subparagraph 40 P.S. § 3403(a)(4) requires that the notice

be clearly labeled as a notice of cancellation or a notice of nonrenewal and 40 P.S. § 3403(a)(5) requires that the notice state the specific reasons for cancellation or nonrenewal Finally, 40 P.S. § 3403(b) entitled, effective notice" states:

"Until an insurer issues a nonrenewal or cancellation notice that complies with the provisions set forth in this act, insurance coverage will remain in effect."

66. Upon review, 40 P.S. § 3403 (a) (3) (iii) makes both legal and logical sense. If an insured, either directly or though their agent/broker is requesting cancellation of their policy then, "written notice of cancellation shall not be required." 40 P.S. § 3403(a)(3)(iii). Think about it, why would an insured need notice of their own actions, notice of a cancellation process which they commenced and requested. Using a contract analysis, the insured is making an offer to cancel in the form of a request for cancellation. The insured then makes a statutorily mandated acceptance per 40 P.S. § 3403(a)(3)(iii) wherein it is compelled that the "coverage shall be terminated on the date requested by the insured"

67. 40 P.S. § 3402-3403 has thus established that an insured can request a cancellation. Written notice directly to the insured must occur unless the policy was cancelled by the actions of the named insured then written notice is not required.

68. County has cited case law which this court has thoroughly reviewed. In title case of *Coppola v. Insurance Placement of Pennsylvania*, 386 Pa. Super. 413, 415,563 A.2d 134 (1986), judge Johnson wrote a scholarly opinion finding that cancellation of a fire policy by an insured is effective on the date that the insured intends to cancel, if such intent is clear and precise, and not on the date that the insurance company receives notice of cancellation. In our case, the rule of law in *Coppola* would dictate that our commercial (not fire) policy would have an effective cancellation date of December 1, 2006, as the insured requested and as was the date used for all premium refunds and commission returns.

69. Judge Johnson goes on to state in *Coppola*, *supra*, at 418, 563 A.2d at 136 that,

"When the insured cancels, however, the legislature imposes no notice requirement; the public policy rationale stated above simply does not apply. The insured who cancels a policy obviously knows that he no longer has the policy. There is no need for a safeguard to guarantee that he receive affirmative evidence of this."

*Coppola* goes on to state:

"Most important all these courts decide that the determinative factual consideration is whether the insured manifested a clear intent to cancel..."

*Coppola* at 419, 563 A.2d at 137.

The *Coppola* court continues:

"...the insured himself surrendered the policy which the court considered as an additional manifestation of intent to cancel"

*Id.* at 421, 563 A.2d at 138.

*Coppola* continued on the same pages to cite the case of *Commercial Standard Insurance Co. v. Farmer's Alliance Mutual Insurance Co.*, 385 F-2d 826 (10th Cir. 1967).

"The *Commercial Standard* court then conducted its inquiry into whether various actions on the part of the insured constituted a clear and unambiguous intent to cancel as of the date named by the insured... The court held that the insured intended to cancel as of the date named in the notice, that the insurance company received the notice and that therefore, the policy was cancelled as of the date designated on the notice."

70. The case of *Scott v. Southwestern Mutual Life Association*, 436 Pa. Super. 242, 647 A.2d 587 (1994) dealt with the insured's cancellation of an insurance policy contract in the contest of a post verdict motion for judgment not withstanding the verdict In *Scott*, the court stated where the cancellation of a policy is relied upon as an affirmative defense, the burden is on the defendant (insurer) to prove effective cancellation of the policy prior to the loss. *Scott* at 247-248, 647 A.2d at 590. The crux of

the insurer's burden of proof turns on whether it can prove that the insured had a clear and precise intent to cancel the policy prior to the loss. *Coppola*, at 416, 563 A.2d at 136.

71. Also in *Scott*, the Superior Court cited *Blasy v. Chester County Mut. Ins. Co.*, 401 Pa. Super. 344, 585 A.2d 493 (1990) indicating that in that case the Pennsylvania Superior Court reaffirmed its *Coppola* decision for the rule that,

> "a cancellation by an insured is effective on the date that the insured intends to cancel the policy and not on the date that the insurance company receives notice of the cancellation[,] *as long as the insured['s]* manifested intent is clear and precise. *Id.* at 348, 585 A.2d 495. Emphasis added.

*Scott* at 254, 647 A.2d at 593.

72. Our facts as found show a return or surrender of the subject insurance policy by Joseph Durkin to H.A.R.I.E. as early as December 1, 2006. Any return or surrender of the insurance policy, according to industry standards and as shown in the ACORD form at H.A.R.I.E. Exhibit N is indicative of a clear and precise intent to cancel per *Coppola*, *Scott* and *Blasy. supra*.

73. The retroactive effective date of cancellation retroactive to December 1, 2006 is clearly illustrated on all of the notices of cancellation generated by H.A.R.I.E. on this subject policy and the other policies. (*See*

H.A.R.I.E. Exhibit Q). The same retroactive effective date of cancellation also appeared in the correspondence directed to Nautilus Insurance. (*See* HALLE. Exhibits K and L). All premium refunds and commission returns were calculated using the December 1, 2006 date. Accordingly, the policy surrender represents a clear and precise intent to cancel and all the documentation, prior to and post the date of loss, all indicates that the intent was a retroactive effective date of December 1, 2006.

74. The emerging rule in *Scott* states that:

"When read together the decisions in *Amfeld, Jones, Scheel, Coppola* and *Blasy* form the following legal standard. As noted above, an insurance policy may be cancelled or terminated by any party to the contract, if such cancellation is provided for in terms of the policy. *Strict compliance with the policy's cancellation provisions can be waived however, when an insured's objective intent to cancel is precise and clear.*" Emphasis added.

*Scott* at 255, 647 A.2d at 594.

75. As noted earlier, our insurance policy contract had terms within it that provided for cancellation or termination. (*See* Endorsement IL 02 46 07 02; *see also* H.A.R.I.E. Exhibit F). Since we have factually determined that Joseph Durkin had written authorization to act as broker of record for Lackawanna County and we have

further determined Mr. Durkin to be the County's agent as well, then he was within his lawful authority to act on behalf of the first named insured and start the cancellation process.

76. Our interpretation of this policy endorsement entitled, "policy changes — cancellation and nonrenewal" is governed by *Higgins v. "Washington Mutual Fire Insurance Company of Lawrence County. PA.*, 838 A.2d 778, 781-782 (Pa. Super. 2003). In that case the Superior Court stated:

> "In examining the language of an insurance policy we are mindful that [w]hile any ambiguities in an insurance contract will be resolved in favor of the insured, a court is required to give effect to clear and unambiguous language."

*Id.*; *Coppola* at 413, 563 A.2d 136.

The Superior Court further stated:

> "Additionally, an ambiguity does not exist simply because the parties disagree on the proper construction to be given a particular policy provision. Courts should read policy provisions to avoid ambiguity if possible."

*Id.*

77. The cancellation and nonrenewal endorsement noted at H.A.R.I.E. Exhibit F is specific to Pennsylvania law and as such it must meet the statutory requirements

found at 40 P.S. § 3403 entitled, "notice requirements for midterm cancellations and nonrenewals." As earlier noted, the provision largely governs the conduct of cancellations and nonrenewals when commenced by the insurer not the insured. However, at 40 P.S. § 3403(3)(iii) the provisions are directed towards cancellations or nonrenewals started by an insured rather than being started by the insurer. 40 P.S. § 3403 (3) (iii) reads as follows:

"(3) Written notice of cancellation in the manner prescribed in this section must be forwarded directly to the named insured or insureds at least 60 days in advance of the effective date *unless one or more of the following exist*:

(iii) the policy was cancelled by the named insured, in which case *written notice of cancellation shall not be required and coverage shall be terminated on the date requested by the insured*." Emphasis added.

78. Anticipating counsel's arguments that 40 P.S. § 3403(3) (iii) does not apply in that the named insured did not cancel the policy nor authorize the cancellation of the policy by Mr. Durkin. This court replies that per the case of *Clarion City School Dist. v. Mary*, 116 Pa.Cmwlth. 376, 379, 541 A.2d 849 (1988):

"Insurance contracts are presumed to have been made with reference to substantive law, including applicable statutes in force, and such laws enter into and form a part

of the contractual obligation as if actually incorporated into the contract...

Where the right to cancel an insurance policy is expressly reserved in the contract itself, than the extent of the right and the conditions on which it may be exercised must be determined by reference to the contract" (citations omitted).

79. It is undisputed that H.A.R.I.E. failed to give written notice to the first named insured at their address on the declarations page. It is also undisputed that this oversight is governed by the endorsement for cancellation and nonrenewal at H.A.R.I.E. Exhibit F. It is further undisputed that at A-4 the endorsement states:

"We will mail or deliver our notice of to the first named insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation."

80. It is also undisputed that H.A.R.I.E.'s notice of cancellation erroneously states the reason for cancellation as, "reason for cancellation: No longer owned by Lackawanna County."

81. So H.A.R.I.E.'s notice of cancellation his two inherent deficiencies as it relates to the cancellation and nonrenewal endorsement. First, they never mailed a notice of cancellation to the first named insured as per H.A.R.I.E. Exhibit F at paragraph A-4. Second, as Per Mr. Durkin's

instruction and believing all property was sold, H.A.R.I.E. states the wrong reason for cancellation as no longer owned by Lackawanna County. In fact, Lackawanna County always retained ownership of the Toyota Pavilion/ Amphitheater during the relevant time period.

82. So what then becomes the impact of these notice of cancellation endorsement errors? Lackawanna County urges the court to find that these errors nullify the cancellation process and therefore leave insurance coverage in place as of the date of loss therefore, concluding that insurance coverage by H.A.R.I.E. is still implicated in covering the County's loss.

83. This County argument can only be entertained in the context of the contract because we know as per the statute at 40 P.S. § 3403(a)(3)(iii) when a policy is cancelled by the insured, "...written notice *shall not* be required and coverage *shall be* terminated on the date requested by the insured." Emphasis added.

84. We also know per 40 P.S. § 3403 that H.A.R.I.E.'s cancellation endorsements were.properly entitled, "notice of cancellation, termination or reinstatement" thus being clearly labeled as the statute directs.

85. Per statute if a violation is found the insurance commission may pursue a cease and desist order and impose a fine not greater than five thousand ($5,000.00) dollars for each violation. 40 P.S. § 3403. The statute

does not direct any voiding of an insured's starting of a cancellation process such as the County directs. Therefore, if the County's proposed remedy of voiding the cancellation exists, then it must be per contract

86. As page 6 of Lackawanna County's proposed findings of fact and conclusions of law, the County has an entry, "HI dispositional fact" wherein it states:

"H.A.R.I.E., failed to strictly comply with the H.A.R.I.E. policy's cancellation Endorsement, as a result of which failure any attempted cancellation of the H.A.R.I.E. policy was invalid and the H.A.R.I.E. policy remained in fall force and effect at the time of the February 14, 2007 loss at issue."

In support of this conclusion of a void cancellation or failure to cancel they start with a 1959 Pennsylvania Supreme Court case, *Harty v. Standard Accident Insurance Company*, 147 A.2d 421 (Pa. 1959), they print in bold letters, "[t]he insurer must show strict compliance with the cancellation provisions." Inherently, these contract provisions must apply only to policy cancellations commenced or started by the insurer and the reasons becomes obvious upon cursory examination.

87. The first named insured on the declaration page is "Lackawanna County Montage Mountain Ski Area." All agree that there is no such legal entity and that the first named insured is actually the County of Lackawanna and

they are or were the record owners of the ski mountain.

88. In the cancellation endorsement IL 02 46 07 02 at paragraphs 4, 5, and 6 of H.A.R.I.E. Exhibit F it states:

"4. We (H.A.R.I.E.) will mail our notice to the first named insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. *The policy will end on that date.*

6. If this policy is cancelled we will send the first named inured any premium refund due. If we (H.A.R.I.E.) cancel, the refund will be prorata and will be returned within 10 business days after the effective date of cancellation. If the first named insured cancels, the refund may be less than prorate and will be returned within thirty days after the date of cancellation. *The cancellation will be effective even if we have not made or offered a refund.* Emphasis added.

89. In our facts, upon becoming aware that the ski mountain has been sold unsuccessful cancellation attempts of the Nautilus general liability policy begin by the first named insured, Lackawanna County through its' agent, Joseph Durkin, assisted by Dominic Verrastro, the County's insurance coordinator. They seek a December 1, 2006 effective date on or about December 1, 2006. The parties believe that the County no longer owns the

property and therefore, no longer possesses an insurable intent therein.

90. For reasons unknown or unclear, notices of cancellation started by the County on or about December 1, 2006 do not issue until January 15, 2007. It now becomes chronologically or temporally impossible to return premium within ten days of the effective date of December 1, 2006 per paragraph 88 subparagraph 6 and yet that is the effective date of cancellation because, by statute, the insured gets the cancellation date they choose. The proviso noted above at paragraph 88 subparagraph 5 also states by contract that, "[t]he policy will end on that date."

91. So now we have what is erroneously perceived as a lack of County ownership due to the sale, thus cancelling any County insurable interest. Accordingly, the County through its agent/broker, Joseph Durkin, begins cancellation of all relevant policies but especially the H.A.R.I.E./montage mountain commercial insurance policy. Mr. Durkin has actual notice and is the County agent/broker who starts the cancellation process. The County's independent contractor insurance coordinator also has actual notice and he attempts to assist Mr. Durkin. The appropriate agent/broker of the first named insured has actual notice yet County now proposed that the duplicative formal written notice per paragraph 4 not being sent to the designated post office box ought to be a sufficiently

egregious error to nullify cancellation or coverage and hold H.A.R.I.E. accountable for their clerical oversight.

92. Keep in mind that this court has found that formal written notice of cancellation was sent on or about January 15, 2007 to Joseph Durkin. So the argument is not that H.A.R.I.E. never sent formal written notice, rather the County's argument is that it did not go to the first named insured on the policy. The same named insured who needed no notice since they started the policy cancellation process through its' agent/broker and who also had actual notice through its agent/broker and insurance coordinator engaging in the cancellation process.

93. H.A.R.I.E. has committed a technical clerical oversight by not also mailing the notices of cancellation to the improperly named first named insured at the post office box. To use an appellate court metaphor, if there is error it is harmless error. County seeks to make it reversible error thus nullifying cancellation and invoking coverage on a policy wherein County through its agent/ broker erroneously thought they had no insurable interest

94. Now we have focused on conduct prior to the loss per the directives of *Coppola, supra.* because we believe that the conduct indicates County's clear and precise intent to cancel the policy (though erroneously) prior to the loss. The clause is not ambiguous and the contract is of H.A.R.I.E.'s authorship. Therefore, notice should have been sent to the first named insured, but where is

our cause for loss here? Is it due to lack of notice, where actual notice is actually possessed by the County as insured through its agent/broker who erroneously starts the cancellation process under an erroneous assumption of all property being sold or is it due to a letter being sent to the "wrong address" when this County has clear actual vicarious notice?

95. Without getting into the expert testimony about standard practice in the industry, we look to the law of agency. The nature and extent of an agent's authority is a question of fact for the jury. *Turner Hydraulics, Inc. v. Susquehanna Construction Corp.*, 606 A.2d 532 (Pa. Super. 1992). Here, this court acts as the finder of fact. Here, we have determined Mr. Durkin is the agent/broker for Lackawanna County by virtue of written broker of record letters. As well as by past policy placement and renewal.

96. As indicated, Mr. Durkin, as a licensed insurance agent in Pennsylvania and as the County's agent/broker was acting within the scope of his actual authority as noted both in writing and by placing, servicing, renewing or cancelling insurance for the County. As noted in *Turner, supra*, if the actions have a measure of similarity to the act for which the principal (Lackawanna County) is sought to be bound and a degree of repetitiveness then apparent authority can be found. Here we have found actual authority.

97. The nature of an agent's authority may be presumed from his or her position and the nature of the acts. *Rednor & Kline. Inc. v. Dept of Highways*, 196 A.2d 355, 358 (Pa. 1964) (citing restatement of agency, Section 49). Here, Mr. Durkin was known by virtue of a broker of record to be the County's agent/broker for the montage mountain business. The nature of his acts past and present confirmed that Mr. Durkin was acting within the scope of his employment with the County.

98. So looking backward prior to the loss of February 14, 2007, we can see Mr. Durkin with written authority from the County and proper license by the state is qualified to represent the County for the book of insurance business governing montage mountain. However, a look beyond the loss only ratifies our conclusion. On or about March 2007, Mr. Durkin returns his unearned premium to H.A.R.I.E. due to a refund due to the County on their premium. If that does not admit agency, I do not know what would.

99. On or about March 5, 2007, the County receives its premium refund pro rata calculated back to their chosen cancellation date of December 1, 2006. The County's check is sent to Joseph Durkin. Mr. Durkin presents the check to the County who deposits it into the County's general fund. It is calculated back to that date of cancellation chosen by Mr. Durkin. It is sent via Mr. Durkin and deposited all without protest by the County for not using the first named insured name and address.

100. Then time and elections pass. A new administration is elected majority commissioners. To their credit, in January 2008, they review the situation and try to correct the errors of the agent/broker for the prior majority commissioners, eleven months after the loss and ten months after the County has negotiated their premium refund.

101. The notice defect by H.A.R.I.E. is not a material breach of the contract The cases cited by the County demanding strict compliance on notice requirement apply to cases where the insured (H.A.R.I.E.) starts the cancellation process. Those cases do not apply when the insured (County of Lackawanna) starts the cancellation process.

102. As noted in *Coppola, supra*. At 418, 563 A.2d 136, "when the insured cancels, however, the legislature imposes no notice requirement;... the insured who cancels the policy obviously knows that he no longer has the policy." So in our fact pattern, where clause A-4 references it H.A.R.I.E. should have provided it, but their failure to do so is not fatal "There is no need for a safeguard to guarantee that the (insured) receives affirmative evidence of this." *Id.* Accordingly, County's Dispositional Fact III is dismissed and denied as to the remedy sought.

103. H.A.R.I.E. as insurer has sustained their burden of proof that the County as insured had a clear and precise intent to cancel the policy (though erroneous) prior to the

loss.

104. County's citation to 31 Pa. Code 113.86 is misdirected as this applies to an insurer directed cancellation and an agent acting on behalf of the insurer not the insured.

105. Lackawanna County's Dispositional Argument IV has been rendered moot by the court's findings of fact and conclusions of law.

106. County's argument about not taking action at a public meeting is disingenuous at best. The crux of County's argument is that no evidence was presented that an official meeting of the Commissioners directed insurance policy cancellation. There was no dispute that the sale of montage mountain was duly authorized by a public meeting. Once that is done all tasks necessary to complete the goal of sale are necessary and proper to conclude the matter. Mr. Tressler was not told what checks to issue out of the closing statement, but they are authorized. Similarly, insurance policy cancellation was inherent in his task to complete the sale of montage mountain.

107. Once the sale was completed and Mr. Durkin erroneously believed all was sold the County no longer possessed the realty in Mr. Durkin's view. The absence of ownership meant the absence of an insurable interest Under these erroneous circumstances the failure to cancel

a policy that no longer insures anything would breach his duty as agent to the County. Furthermore, as the County's written broker of record and agent, it is beyond cavil that in this book of insurance, Mr. Durkin's actual authority would allow such a ministerial nondiscretionary task to occur without further formal authorization given our facts as found in this case.

108. Given our facts as found, Mr. Durkin, was the County's agent/broker contact person and point person for all insurance carriers insured relative to montage mountain's insurance needs.

109. For all of the above reasons, H.A.R.I.E. action in declaratory judgment at 08 CV 961 is granted and judgment is rendered in favor of H.A.R.I.E.. With regard to 08 CV 887, judgment is rendered in favor of the remaining defendants. This disposition rendered the County's bad faith claim moot.

110. An appropriate order follows.

## ORDER

And now to wit, this 6th day November, 2014,

(1) For all of the above reasons, H.A.R.I.E.'s cause of action in declaratory judgment filed to 08 CV 961 is granted and judgment is rendered in favor of H.A.R.I.E.

(2) With regard to 08 CV 887, judgment is rendered in favor of the remaining defendants.

(3) This disposition rendered the County's bad faith claim moot.

(4) There is no monetary award of any nature granted to any party in either case.